Southern Oil Works *v.* Bickford and Sherrod.

SOUTHERN OIL WORKS *v.* W. A. BICKFORD.

AND

SOUTHERN OIL WORKS *v.* H. R. SHERROD.

1. PLEADINGS AND PRACTICE. *Damages.* ·In an action for the destruction of a house, ·the measure of damages is the value of the house at the time of the injury.

2. SAME. *Same. Evidence.* It is competent to prove, as an element to be considered in ascertaining the value of the house in such a case, the cost of rebuilding, the charge being correct upon the proper measure of damages.

3. SAME. *Same. Same.* But it is not competent, in such case, to prove the valuation which the plaintiff may have, under oath, put upon the new house in giving in the same for taxation six years after the destruction of the old house.

4. SAME. *Same. Same.* There is evidence to sustain the verdict of a jury fixing the value of the house destroyed, where there is proof describing the house in all the essential elements which would go to make up its value, and showing its age, its rental value at the time, and a general estimate of the loss by a person cognizant of all the facts, together with the cost of rebuilding, the verdict being about one-third less than the general estimate of the witness, and there being no proof on the other side.

5. CHARGE OF COURT. *Facts not in evidenre.* It is error, although not necessarily reversible error, to charge the jury upon a state of facts not in evidence, the settled rule being not to reverse for such an error unless the court can see that the party complaining was prejudiced thereby, or, as it has been otherwise expressed, where the court can see that the jury could not have been misled thereby.

6. SAME. *Requests.* If the charge is correct as far it goes, the trial court can not be put in error by qualifications growing out of the facts to which his attention was not called at the time.

7. SAME. *Immaterial charge.* It is not error to refuse to charge a proposition incomplete as requested, when a complete charge on the point would be wholly immaterial. ·

8. CONTRACT. *Representations.* No representations in relation to the subject-matter of a contract, which are in the nature of commendation or inducement to the trade, can have any legal effect where they are no part of the contract.

## FROM SHELBY.

Appeal in error from the Circuit Court of Shelby county. J. O. PIERCE, J.

ESTES & ELLETT for Oil Works.

GANTT & PATTERSON and CLAPP & BEARD for Bickford and Sherrod.

COOPER, J., delivered the opinion of the court.

Bickford and Sherrod brought separate actions against the Southern Oil Works to recover damages for the destruction of their respective houses by the same alleged wrongful act of the corporation. The cases were tried together by consent of the parties, and resulted in a verdict and judgment in favor of the plaintiffs below. The Southern Oil Works appealed in error, and the Referees report that the judgment should be reversed for errors in the rulings of the trial judge upon the admission and rejection of evidence, and because there is not sufficient evidence to sustain the verdict as to the amount of damages. In other respects the Referees find the proceedings below correct. The plaintiffs below except to these conclusions of the Referees in favor of the defendant, and the defendant below excepts to the report because the Referees have

failed to sustain other errors assigned for a reversal of the judgment.

Bickford and Sherrod owned adjoining houses in Exchange Building on Front Row in Memphis, having a common partition wall between them. The houses were erected in 1847. In April, 1867, Bickford leased his house to the Southern Oil Company as a warehouse to be used for storage. The contract of lease was made by Bickford orally with an agent of the company. Bickford testifies that the house was leased for the storage of cotton seed, oil and cake; the agent says that the house was leased for storage generally. The southern half of the first floor of the house, being that half next to the partition wall between the two houses, was in fact used by the Southern Oil Works for the storage, at the instance of a third party, of iron cotton bale ties until the floor threatened to give way, and the partition wall was, to the width of a brick, crushed down to the ground for a few feet. There is proof tending to show that the company then, without notice to defendants in error, undertook to repair the wall, and put supports under the floor. On November 28, 1876, during the continuance of the lease, the partition wall between the two buildings fell down, and destroyed them both. Sherrod's house was then used for storing cotton.

The original declaration filed on behalf of Bickford alleged that the house was leased for the storage of cotton seed, oil and cake; that the property was in a safe and serviceable condition for the purpose; that the defendant, without the knowledge or permission of

the plaintiff, permitted the McComb Cotton-tie Company to store upon the first floor of said house a large number of iron cotton-ties of the weight of several hundred tons, by reason whereof the partition wall began to crack and shell off; that defendant thereupon resorted to various devices for the purpose of preventing the immediate fall of the wall; that defendant failed and neglected to notify plaintiffs of the unauthorized use of the house, or of the damage done, or of the expedients used, until the wall gave way.

Additional counts were afterwards made to the declaration, alleging in substance a general letting for storage purposes; that the building was only adapted to ordinary storage, and not capable of sustaining the weight of cotton seed and iron cotton bale ties put into it by defendant; that defendant finding the partition wall giving way undertook to repair it without notice to the plaintiffs, but in so careless and. unskillful manner as to still leave it defective, whereby it fell.

As the case comes before us upon the exceptions to the Referees' report, the only plea filed was that of the general issue. And it is conceded on both sides that the trial judge correctly charged the jury that the measure of damages, if they found the facts in favor of the plaintiffs, would be the value of the house at the time of its destruction: *Burke* v. *Railroad Company,* 7 Heis., 451, 465; 3 Suth. on Dam., 368.

There is testimony in the record describing fully the two houses thus destroyed, showing their dimensions, the kind of material used in building them, the character of the work, and the time when built.

Bickford also proved that he was getting for his house a monthly rent of $51, and that the damage sustained by the destruction of each house was about $6,000. He also testified that he had rebuilt both houses within ten months after the accident. He was then asked: "What was the cost of rebuilding each house?" The defendant's counsel objected to this question as irrelevant and incompetent. The court overruled the objection, and the witness stated that it cost $5,400 for each house. The Referees report that the court erred in admitting this testimony. We are unable to concur in this opinion. This court held in *Mayor, etc.*, v. *Kimbrough*, 12 Heis., 133, 140, which was a suit to recover damages for the loss of a steamer by reason of the negligence of the corporate authorities of the city of Memphis, that it was not error to instruct the jury that in estimating the damages they might look, as a circumstance, to the cost of the boat, the jury having been fully instructed by the trial judge that it was not the cost but the value of the boat at the time of the accident which they were to ascertain. And it is laid down by text writers, that in actions against insurance companies for the recovery of the value of property lost, where the property has not a "ready" market value, the cost of replacing the thing is an element proper to be considered: 3 Suth. on Dam., 87. The absence of a ready market value makes it competent to prove value by the opinions of witnesses who have the requisite knowledge: 1 *Id.*, 798; Whar. Ev., sec. 450. And where the value must be gathered

from opinion, the cost of replacing would undoubtedly aid the jury in coming to a correct verdict.

The defendant introduced a witness and offered to prove by him that he was the assessor of taxes, and that the plaintiff, Bickford, had, in the spring of 1882, given in to him as such assessor for taxation the house in the Exchange Building at a valuation of $900, and made oath that such was its true value. This testimony, upon objection by the plaintiff's counsel, was excluded. This exclusion is assigned as error, and the Referees report the assignment well taken. But we are unable to concur in this opinion. What bearing the value of the replaced building in 1882 can possibly have on the destroyed building in 1876 we cannot imagine. It is too remote for practical purposes.

The Referees further report, that there is no evidence to sustain the verdict fixing the damages on each building at $4,080. But we are unable to concur in this conclusion. There is proof, as we have seen, describing the building in all the essential elements which would go to make up its value, including its age. There is also proof of its rental value at the time of the accident, a general estimate of the loss sustained, and the cost of rebuilding. From these data the jury might well estimate the value of the houses, the defendant having introduced no testimony on the subject. The amount of the verdict is warranted by the facts, showing a fair allowance for the deterioration of the buildings by age.

The plaintiff in error further contends that the

evidence is insufficient to sustain the verdict generally, and in this connection the learned counsel undertakes to analyze the grounds of action as laid in the different counts of the declaration, and the testimony bearing upon them.  But we concur with the jury, the trial judge and the Referees in thinking that the evidence is sufficient.  There is no implied warranty in a general lease that the demised premises are safe, well built, or fit for any particular use: 3 Suth. Dam., 117.  If, therefore, the jury found, as they might have done, that the leasing was for a special kind of storage, and that the contract was violated by the defendant; or that the lease was general, and that the defendant negligently overweighted the building, and then so unskillfully repaired it as not to remedy the evil, there is evidence to sustain their finding.

The eleventh clause of the charge undertakes to state the law upon the supposition that one of the walls of the store was defective, and that this fact was known to the defendant.  The twelfth clause goes upon the idea that the wall became defective by the defendant's use, that the defendant repaired it in such a negligent manner as to leave it in an unsafe condition, and thereafter imposed a greater burden than the building could · bear.  It is argued by the defendant's counsel that there is no proof to show that defendant knew that the wall was unsafe, or after the wall was repaired that the defendant ever imposed a greater burden on it than the building could bear, and that it was error to

42—VOL.14.

submit to the jury theories of which there is no evidence. There is no direct proof that the defendant knew that the wall was defective before the scaling of the wall, nor that the burden was increased after the wall was repaired. But the defendant's proof tends to show that supports were put under the floor before the wall was crushed, and that the weight on the floor was only gradually diminished after the wall was repaired. There was an opening for the argument that the jury might infer a knowledge by the defendant of some defect, and that the weight on the floor after the repairs was too great. And the court may properly charge upon all hypotheses which may be made on the facts. In the absence of all proof it is error, though not necessarily reversible error, to charge upon abstract theories. "Very few verdicts," this court has said, "would stand if the vague generalities which trial judges feel it their duty to indulge in so as to cover every possible view which may have been presented in the argument of counsel, were treated as fatal because there were no facts in evidence to sustain them": *Railroad* v. *Duffield*, 12 Lea, 63, 74.

The established rule is not to reverse for such errors unless the court can see that the party complaining was prejudiced thereby. And it cannot be seriously contended that the clauses of the charge now in controversy were such as to mislead the jury. On the contrary, we think we may safely say that we can see that the jury could not have been misled thereby.

Exception is also taken to the sixth and eighth clauses of the charge. The sixth clause is, in substance, that in the absence of a warranty that the building is safe, well built, or fit for any particular purpose, the tenant takes a rented house as it is, and must use it with a view to its fitness and capacity, and if it be loaded by the tenant beyond what an ordinarily prudent man would, under similar circumstances, have put upon his own building, whereby it is destroyed, the tenant would be responsible for the damage. The eighth clause is that in determining the degree of care exercised by the defendant the jury will consider the fitness and capacity of the building to bear burdens, etc. The objection is not to the correctness of these charges in the abstract, but that they had a tendency to mislead the jury in view of the facts of the case, the defendant having the right, it is insisted, to suppose the buildings were sound. But the defendant should have asked for a modification of the charge by the addition of the facts at the time. If the charge be correct as far as it goes, the trial judge cannot be put in error by qualifications growing out of the facts to which his attention was not called at the time.

The first request of the defendant was properly refused. It proceeds upon the idea that if a house be built and used as a storehouse or warehouse any weight might be put upon it which it might be reasonably expected to sustain, if the jury thought that the weight was not unreasonable or excessive. But the request ignores the duty of a tenant who

goes in under a lease without warranty, which is embodied in the sixth and eighth clauses of the charge already considered.

The second request of the defendant was for a charge that, if the defendant ascertained that the wall was in an unsound condition, the law did not impose upon the defendant the duty of notifying the plaintiffs thereof, and it was not negligence to fail to give such notice, and the plaintiffs could not recover on the ground of such failure. The declaration, in the amended count, made an averment that the defendant had neglected to give the plaintiffs notice of the defect in the wall after it was discovered. But the court had no where in the regular charge said that the defendant was under any legal obligation or duty to give the notice mentioned. And his Honor could not properly have given the charge as requested, conceding it to be the law, without adding that the plaintiffs could recover, if the jury found the necessary facts as set out in the charge, whether the notice was given or not. Upon the law as assumed in the request, the question of notice could cut no figure either way, and the court might properly ignore it, and any charge upon the subject would have been erroneous which did not embody this view. The request was, therefore, incomplete, and a complete charge on the point would have been utterly immaterial.

The third request was in these words: "If the jury believe from the evidence that, at the time of letting the house to defendant, Bickford represented that it was strong, and that defendant need not be

afraid of its strength, and informed defendant that it had been used during the war for the storage of charged ammunition, guns, shot, etc., then the defendant had the right to believe that the building was safe and strong, and able to bear the weight such a building might ordinarily be expected to bear, and if it fell down without being overloaded beyond its reasonable capacity, the defendant is not liable for damages." It is not contended, say the defendant's counsel, that on such a letting as is shown in the present case, there was any implied warranty on the part of the lessor that the building was sound and strong, or fit for the use for which it was let; or that the representations made amount to an express warranty; but, they add, the defendant was justifiable in confiding in the representations of the plaintiff, and cannot be guilty of culpable negligence, if, on the faith of these representations, they placed in the building a weight of freight which it would have been perfectly safe to put there if the representations were true. But this would be to treat the representations as an express warranty, for no representations in relation to the subject-matter of a contract can have any legal effect except as part of the contract. For every other purpose, what was said could only amount to puffing statements in praise of the property, which the other party can only rely on at his peril: *Bridges* v. *Robinson*, 2 Tenn. Ch., 720. The request was therefore properly refused.

The exceptions to the Referees' report must be sustained, and the judgment below affirmed.