KROGER GROCERY & BAKING CO. v. ADDINGTON et al. (two cases).—74 S. W. (2d) 650.

SAME v. THOMPSON et al. (two cases).—74 S. W. (2d) 650.

Western Section. May 18, 1934.

Petition for Certiorari denied by Supreme Court, June 23, 1934.

Armstrong, McCadden & Allen and Emmett W. Braden, all of Memphis, for plaintiffs in error.

Grover McCormick, of Memphis, for defendants in error.

KETCHUM, J. These four suits were tried together. The suit of Rivers Addington, a minor, who sues by her father, J. L. Addington, as next friend, and that of James Thompson, a minor, who sues by his father, J. L. Thompson, as next friend, are for damages for personal injuries sustained in a collision between a large Chrysler sedan in which they were riding as guests of Wilbur Welch and a large Federal truck owned by the Kroger Grocery & Baking Company, and driven by its employee, O. B. Norman. The other two suits were brought by J. L. Addington, the father of Rivers Addington, and J. L. Thompson, the father of James Thompson, who sue for hospital fees and doctors' bills incurred in the treatment of said Rivers Addington and James Thompson for their injuries.

The collision occurred at the intersection of McLemore avenue and South Bellevue street, in the city of Memphis, at about 1:40 o'clock on the morning of June 14, 1932. Bellevue avenue runs north and south, and McLemore avenue runs east and west. Both streets are paved. McLemore avenue is 42 feet wide from curb to curb and Bellevue avenue is 40 feet wide. There are street car tracks on both streets. There is a stop sign in the center of Bellevue on each side of McLemore. The stop sign on the north side of McLemore is 23.5 feet north of the curb line of McLemore; and the stop sign on the south side of McLemore is 10.5 feet south of the south curb of McLemore. There were trees and hedges along the fence in the yard at the northwest intersection of the two streets which obstructed the vision of persons driving south on Bellevue until the vehicle was near the north curb line of McLemore. The sidewalk along the south line of McLemore avenue is 9 feet wide. There is a drug store at the southwest intersection of the two streets and a Kroger Grocery at the southeast intersection.

The Kroger truck, heavily loaded with groceries, was being driven east along the south side of McLemore avenue. It was being driven by the defendant O. B. Norman, a negro driver employed by the Kroger Company; he was on his way to make a country delivery.

The Chrysler sedan was being driven south on Bellevue by Wilbur Welch, whose home was in Crenshaw, Mississippi. He and the plaintiff, Miss Rivers Addington, were on the front seat; and the plaintiff, James Thompson, and Miss Ellyn Baughman were on the back seat, Miss Baughman being on the left side, back of the driver, and Mr. Thompson being on the right side. These parties were all between the ages of 19 and 21, and were returning from a dance on the Peabody roof; at the time of the collision they were on their way to a point south of McLemore avenue to get some sandwiches.

As the result of the collision, the Chrysler sedan was demolished and all the occupants were injured. James Thompson was the most seriously injured; he was thrown out of the car and his right foot was caught between the car and the concrete curb; the foot was terribly mashed and his leg broken, so that it had to be amputated the next day, about halfway between the ankle and knee; his left ankle was strained; he received cuts about the face, and his front teeth were loosened; and he had many bruises about his body. Miss Addington received cuts about her face, especially her lower lip, so that it had to be sewed up; her knee was hurt; and she had minor bruises about the body.

The jury returned a verdict of $15,000 for James Thompson, and $500 for Rivers Addington; $1,000 for J. L. Thompson, and $100 for J. L. Addington. On the motion for new trials the trial judge suggested a remittitur of $550 in the J. L. Thompson case, and one of $75 in the J. L. Addington case, rendering judgments for $450 and $25, respectively, in these two cases. The remittiturs were accepted, the motions for new trial were denied, and judgments were entered on the verdicts, and the defendants have appealed in error to this court.

The assignments of error complain of error in the charge as given, in the refusal of special requests, and in the excessiveness of the verdicts. The consideration of these assignments will necessitate a brief reference to the pleadings.

The declarations are in two counts, one based on common-law negligence, and the other on alleged violation of city ordinances. The negligence charged in the common-law count is that the truck was being operated at a reckless and dangerous rate of speed, in excess of 35 miles per hour; that the driver did not have it under control; that he did not keep a proper lookout ahead, especially since he was driving down grade approaching a blind crossing; that he did not sound his horn; that he did not apply the brakes; or that the brakes were defective; and that the truck was not properly equipped with lights. Under the second count the negligence charged is the violation of certain ordinances of the city of Memphis, which were specially pleaded, but which are here only briefly described, to-wit:

(1) Ordinance prohibiting reckless driving; (2) speed limit, 20 miles per hour for trucks; (3) ordinance requiring that motor vehicles be equipped with horn or other warning device; and (4) that horn or other signal device be sounded whenever necessary; (5) that motor vehicles be equipped with service and emergency brakes, and that they be kept in good condition at all times—all of which ordinances it was averred were violated.

The defendants filed pleas of "not guilty," contributory negligence, and special pleas that the driver of the sedan had violated

certain ordinances in the traffic code, to-wit: (1) That the driver of every motor vehicle shall obey all traffic signs and devices; (2) that full stops be made at "stop" signs at street intersections; (3) that vehicles be kept as near the right-hand curb as practicable; (4) that at street intersections vehicles be driven on the right half of the roadway; (5) the reckless driving ordinance; (6) the maximum speed limit of 25 miles per hour; (7) the ordinance requiring that right of way be yielded to vehicles approaching from the right; all of which ordinances it was averred were being violated by the driver of said car; and that the plaintiffs had acquiesced in the violation thereof, and were therefore barred by his negligence.

Taking up the assignments in the order in which they are discussed in the briefs, we consider, first, the fourth, in which complaint is made that the trial judge erred in charging the jury as to the common-law duty of motor vehicle drivers to keep a vigilant lookout ahead so as to prevent accidents; and to exercise reasonable and ordinary care in reference to speed, control, and position on the highway; and that, if defendant's driver measured up to that degree of care, the defendant would not be liable; but, if he fell below that standard of reasonable and ordinary care, he would be guilty of negligence. The objection to this instruction is that the common-law rule as to driving was not applicable in this case, because the duty of the drivers was regulated by ordinances; and that the effect of this instruction was to disregard or abrogate the ordinance which was controlling.

This instruction was not prejudicial to the defendants. None of the ordinances pleaded relieved the driver of a motor vehicle of the common-law duty to keep a lookout ahead to prevent accidents, or of the duty to exercise ordinary and reasonable care in reference to the speed and control of his vehicle, and his position on the highway. So the defendants were not hurt by the charge that the driver of the truck would be negligent if he failed to measure up to the standard of reasonable and ordinary care in the operation of the truck.

The court had just stated to the jury at length the contentions of the parties as set out in their pleadings; in stating the plaintiffs' contentions, he stated the negligent acts complained of in the common-law count of the declarations; and then the alleged violations of the ordinances under the second count; in like manner he stated to the jury the contentions of the defendants under their several pleas; and then, after charging as to the burden of proof, and as to their duty to weigh the evidence and determine the facts, etc., he told them that the first question for them to determine was the question whether the driver was guilty of negligence; and he then instructed them as to the common-law duty of drivers here complained of.

In a subsequent part of the charge he correctly charges the jury with reference to the observance of the ordinances pleaded.

The charge was not prejudicial, and this assignment will be overruled.

■ ■ The fifth assignment complains of an instruction given to the jury in the general charge with reference to the common-law duty of drivers of motor vehicles at street intersections; and especially to have their vehicles under reasonable control, "so that the vehicle reaching the intersection first may proceed into the intersection and not be run into by that reaching the intersection last." The insistence is that the common-law rule was inapplicable because under the ordinances pleaded the truck had the preferential right of way; that it was the duty of the driver of the sedan to stop at the stop signal before entering the intersection, and to yield to a vehicle approaching the intersection on McLemore the right of way, regardless of which reached the intersection first.

There may be merit in the contention that the stop signal ordinance does change the common-law rule applicable to drivers of motor vehicles at intersecting streets. The ordinance requiring drivers to yield the right of way to vehicles approaching from the right on intersecting streets is not applicable, however, because by its very terms it does not apply where the traffic is controlled by a traffic control device or sign. However this may be, the giving of this instruction is not reversible error as to these plaintiffs who were the guests of Welch in his car. His negligence could not be imputed to them. See Campion v. Eakle, 79 Colo., 320, 246 Pac., 280, 47 A. L. R., 289, and note on page 298.

The court charged the jury fully that it was the duty of the plaintiffs to exercise reasonable and ordinary care for their own protection, under all the facts and circumstances; that the negligence of the driver is not generally imputed to the guest; but that ordinary and reasonable care on the part of the guest requires that he protest against any reckless or unlawful driving on the part of the driver; and that, if he sees, or in the exercise of reasonable and ordinary care should see, that the driver is going into danger, then he must call the driver's attention to it. He fully charged the jury on the question of contributory negligence; and the question of the plaintiffs' negligence in failing to protest against Welch's alleged reckless driving is now settled by the verdict.

For an interesting discussion of the rights and duties of a guest in an automobile, reference is made to the case of Dedman v. Dedman, 155 Tenn., 241, 246-248, 291 S. W., 449; and the cases there cited.

This assignment will be overruled.

■ The sixth assignment of error is that the court erred in that part of the charge to the jury in which he states the defendant's theory. The objection is that, after stating the defendant's theory, the court nowhere in the charge tells the jury that, if they find that the defendant's theory is true, it is their duty to bring in a verdict for the defendant.

It will be observed that no objection is made that the court did not fully and accurately state the defendant's theory. The statement is too lengthy a statement to be quoted here; but an analysis of it will show that it consists of two parts: (1) Of a denial of the specific acts of negligence in the operation of the truck with which the defendants are charged in the declaration; and (2) of a claim that the collision was proximately caused by the negligence of the driver of the sedan; and that the plaintiffs were negligent, too, because they did not protest against the reckless and unlawful driving of Welch, the driver of the sedan, and therefore are not entitled to recover.

With reference to the first part of the defendant's theory, viz., the denial of negligence, the court charged the jury that the first question for them to determine was whether the driver of the defendant's truck was guilty of negligence. "If you find that he was not guilty of negligence in the particulars alleged against him in the plaintiffs' declarations, you need not go any further for that would end it in favor of the defendants," etc.

In respect to the second portion of the statement of the defendants' theory, he charged the jury at length with reference to the duty of the plaintiffs to exercise reasonable and ordinary care for their protection, and on the question of contributory . negligence which would bar a recovery. There is no merit in this assignment and it is overruled.

The seventh assignment of error complains of the action of the court in refusing to give a special instruction on the "stop sign" ordinance in the form in which it was requested. The request as submitted charged that the ordinance was a valid ordinance, and required that the operator of an automobile should come to a full stop at the intersection, etc., all as provided by the ordinance. The request then added a sentence not contained in the ordinance, that "it is not only his duty to stop, but to remain stopped until he can make a safe entry into said intersection." The court modified the request by striking out this last sentence, and gave the balance which is in strict accord with the provisions of the ordinance.

It was not error for the court to modify the request by striking out that part which was not contained in the ordinance. The court gave the instruction in the language of the ordinance, and the defendants were not entitled to have this additional requirement read into it.

In Malone & Bowden Tile & Marble Co. v. Hall, 4 Tenn. App., 307, it was said:

"Nor do we think it necessary that the trial judge should do more than to charge the provisions of the ordinance, without going further and construing and defining its meaning, where the language of the ordinance is intelligible and free from doubt and ambiguity

as to its meaning. Frequently the clearest meaning of an ordinance, or a statute, is expressed in the language of the ordinance or statute, and a trial judge, however careful in the selection of his words, could add nothing to the clarity of the ordinance by undertaking to explain its meaning. Lamke v. Harty Bros. Trucking Co., 96 Conn., 505, 114 Atl., 533.''

Assignment overruled.

The eighth assignment complains of the refusal to give a special instruction to the effect that the plaintiffs could not recover if they knew that Wilbur F. Welch was driving at a reckless and dangerous rate of speed, or that he did not have his car under control, or was violating any of the city ordinances, and if they did not protest or remonstrate with him as to the manner in which he was operating the car. The court charged the jury fully and accurately on this feature of the case, so this instruction was properly refused.

Assignment overruled.

The ninth assignment is based upon the refusal of the court to give a special instruction to the effect that it was the theory of the plaintiffs that Welch was proceeding across the street at a rate of speed not in excess of 10 miles per hour, and that, unless the jury found by a preponderance of the evidence that the accident occurred in the way the plaintiffs testified it happened, they should return verdicts for the defendants. This instruction is objectionable, in that it does not fully state the plaintiff's theory of the case; in that it singles out one part of the evidence and tells the jury to base their verdict on that; and in that it absolutely imputes the negligence of Welch to the plaintiffs. It was therefore properly refused, and this assignment will be overruled.

The first, second, and third assignments are that the verdict is excessive, that it is grossly excessive, and that it is so grossly excessive as to indicate passion, prejudice, or unaccountable caprice on the part of the jury.

We assume that counsel here refer to the $15,000 verdict in favor of James Thompson. There is no basis for the claim that the other three verdicts, after the two remittiturs were suggested and accepted, are excessive. James Thompson was a young man twenty years of age at the time of the accident; he finished high school in 1930, and was attending the State Teachers' College in 1932; he was an athlete, and played football, baseball, and tennis while in high school and college; he was exemplary in his habits; he was preparing himself for a professional career, that of a civil engineer; because of the loss of his leg, he has given up the idea of engaging in that profession, and has taken up the study of dentistry; so his whole career in life has been changed by reason of this injury. The proof is that he suffered the most excruciating pain; his right foot was caught between the automobile and the concrete curb, and he could not be

extricated for a long time; his foot was horribly mangled; his leg had to be amputated in order to save his life; at the time of the trial, a year and a half after the accident, the wound had not healed sufficiently to enable him to use an artificial limb. The left ankle was badly sprained. He had cuts about the face leaving permanent scars; his front teeth were knocked loose, and were still loose at the time of the trial.

The learned trial judge who saw the plaintiff, and heard all the witnesses testify, and saw their demeanor on the witness stand, has approved the verdict, and we do not think it is excessive.

In Davis-Mize Co., Inc., v. Weller, 13 Tenn. App., 246, 254, this court, in an opinion by the late Judge Owen, approved a verdict of $20,000, which had been recovered by the plaintiff, a young man 24 years of age, who was engaged in an automobile accessory business in partnership with his brother. Weller had suffered a broken nose, and his leg was broken between the ankle and knee; a bone graft operation was necessary; there had not been a satisfactory union at the trial, and Dr. Campbell testified that often such operations resulted in nonunion; and that, if a satisfactory union was not obtained, the plaintiff would have to wear a brace. The proof also showed that Weller suffered excruciating pain, and still suffered up to the time of the trial. The verdict of $20,000 was held not to be excessive. The court quote the following from the opinion in Reeves v. Catignani, 157 Tenn., 173, 176, 7 S. W. (2d), 38:

"The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence."

The most recent case on the question that has been brought to our attention is Louisville & N. R. Co. v. John W. Nichols,[1] in which the plaintiff, a railway fireman 37 years old, with an earning capacity of $170 per month, recovered a verdict of $18,000 for the loss of a foot and a part of a leg. The trial judge suggested a remittitur of $3,000, and judgment was rendered for $15,000. The court say:

"We do not now know what is to be the value of the dollar, but we may consider the fact that the purchasing power of money is now decreasing. Power Packing Co. v. Borum, 8 Tenn. App., 162. . . . As the amount awarded is not manifestly excessive, the judgment of the jury as modified by the remittitur suggested must govern. Saucier v. Roberts, 2 Tenn. App., 211."

It would be useless to cite further cases. We are satisfied that the verdict of $15,000 is not excessive, so this assignment will be overruled.

All the assignments of error having been overruled, it follows that the judgments of the circuit court will be in all respects affirmed at the cost of plaintiffs in error and the surety on the appeal bonds.

Senter, J., and Prewitt, Sp. J., concur.

---

[1]Opinion not for publication.