# McKINNON et ux. v. MICHAUD.—260 S. W. (2d) 721.

Western Section.   March 16, 1953.

Petition for Certiorari denied by Supreme Court, July 17, 1953.

150

Margaret Wilkinson, and Tual & Morgan, all of Memphis, for plaintiffs in error.

Taylor & Quick, of Memphis, for defendant in error.

ANDERSON, P. J.   This action was brought by Louis Michaud against Mr. and Mrs. W. H. McKinnon to recover damages for injuries to personal and real property as a result of a fire.   There was a jury verdict for the plaintiff in the total amount of $8,843.50 against both defendants.   From the judgment entered on the verdict, only Mrs. McKinnon appealed in error.   By sixteen assignments of error the defendant contends that (1) there is no substantial evidence to support the verdict and hence the Judge should have sustained her motion for a directed verdict made at the conclusion of all the evidence; (2) that he erred in his instructions to the jury in certain particulars and in failing to grant certain special requests for instructions submitted by her; (3) that he erred in overruling the defendant's objections to certain evidence.

The property in question owned by the plaintiff is located at the junction of U. S. Highway 70 with Munson Road in Shelby County.   It consists of three units, all facing Highway 70, including a filling station and a store building, with living quarters in between the latter, consisting of four rooms, bath and utility room.   On or about January 27, 1951, the filling station and that portion of the premises occupied as a dwelling, together with its contents were destroyed by fire, which also damaged the store building and a portion of its contents.   The defendant W. H. McKinnon had the filling station under lease and was operating it at the time the loss occurred.   He

is the husband of the defendant Mrs. W. H. McKinnon, but at that time they were estranged.

Mrs. McKinnon was in the business of selling and distributing gasoline and other petroleum products at wholesale. This business was her sole and separate property under the terms of a separation agreement with her husband. In the operation of his filling station, the husband patronized his estranged wife's business. The theory of the action was that while making a delivery of gasoline to the filling station, Mrs. McKinnon's servant carelessly and negligently caused the tank into which he was putting the gasoline to overflow and come in contact with an open gas stove, as a result of which there was an explosion and fire from which the injuries resulted. While there are some conflicts in the evidence as to matters we think are immaterial, there is none in the evidence showing the facts which we conceive to be determinative.

The three buildings on the property formed a row running east and west. The easternmost building was used as a service station. The living quarters occupied by the plaintiff adjoined the service station on the west and were of frame construction with a brick front. The unit to the west of the living quarters was of brick construction and was used as a grocery store. The service station had two rooms—the front one being used as an office and the one in the rear for the storage of oil and supplies. There was a kerosene heater in the office from which the outer jacket had been removed. A door at the front of the office opened to the outside and a doorway inside the office opened into the storeroom. Two gasoline pumps were located on the outside in front of the office. There were three underground gasoline tanks for the storage of gasoline. These were on the property at the time the plaintiff purchased the property but were owned by the Lion Oil

Company. At the time of the accident one of these tanks was located under the concrete floor of the storage room adjacent to the office. This tank was used for the storage of ethyl gasoline and was the one which was being filled at the time of the accident. The opening or filler pipe to the tank was situated outside and in front of the filling station, as was also the vent pipe. Inside the station there was a screw cap on the tank itself which could be removed in order to measure the contents of the tank.

On January 27, 1951, about noon, a tank truck owned by the defendant Mrs. W. H. McKinnon, and operated by her servant, arrived at the filling station to make a delivery of gasoline. The servant was a colored boy about 20 years of age by the name of William Peewee Nickson. An employee of the defendant W. H. McKinnon, by the name of Joseph Marise, was in charge of the service station at the time. Nickson filled with "regular" gasoline one tank situated near the west end of the filling station, and then pulled up in order to put the remainder of his load in the ethyl tank. He put the nozzle in the filler pipe leading to the ethyl tank and started the gasoline running into it. Nickson noticed that the gasoline was not flowing freely, and instructed Marise to unscrew the cap on the tank so as to increase the flow. He thereupon got back into the cab of his truck and began to read a comic book. He made no effort to ascertain the extent of the flow of gasoline by the meter located in the rear of the truck or to check the tank itself, notwithstanding that he had been told by Marise at the beginning of the operation that he, Marise, did not believe it would hold all the gasoline in the tank truck. The gasoline overflowed from the tank, covering the floor of the garage or storage room and flowing through the door leading from that room into the office.

Just prior to the explosion Marise was in the office. When he discovered the gasoline approaching the open doorway, he became frightened and ran out of the building. Nickson having discovered the overflow and the fact that it had reached the office through the open doorway, threw one or more buckets of water on it with the idea of washing it back into the garage. At this time the open kerosene stove in the office was alight. The water thrown on the gasoline caused it to splash against the stove, bringing about an explosion and fire, resulting in the above described injuries to the property. ⸗

██ It is contended that by the undisputed evidence the plaintiff was shown to be guilty of contributory negligence. This theory is not supported by the brief required by our rules, and we are justified in assuming that the contention is waived. Ward v. Gulf M. & N. R. Co., 23 Tenn. App. 533, 134 S. W. (2d) 917. But if it were otherwise we think the contention without merit. It seems to proceed upon the assumption that the manner in which the improvements were ˙constructed, including the gasoline tank, created a condition that was dangerous for the delivery and storage of gasoline, considering its inflammable nature. If we were to assume this to be true the plaintiff's action would not be barred. Before that would result, it would have to further appear that the condition contributed to the injuries as a proximate cause, and no such conclusion was possible in any view of the evidence. An event may be one without which a particular injury would not have occurred, yet if it were merely the condition or occasion affording an opportunity for other events to produce the injury, it may or may not be the proximate cause thereof in the legal sense. Elmore v. Thompson, 14 Tenn. App. 78, 100; 65 C. J. S., Negligence, Sec. 103, page 649. See, also, Sec. 111-d, page 693; Moyers v. Ogle, 24

Tenn. App. 682, 148 S. W. (2d) 637; Moody v. Gulf Refining Co., 142 Tenn. 280, 218 S. W. 817, 8 A. L. R. 1243.

Whether it is or not depends upon whether the succeeding event or events were superinduced by the condition or occasion. Restatement of the Law of Torts, Sec. 443; see, Garis v. Eberling, 18 Tenn. App. 1, 71 S. W. (2d) 215; Brodie v. Miller, 24 Tenn. App. 316, 143 S. W. (2d) 1042. In this case the evidence failed to show the requisite causal connection.

It is further contended that while the truck driver was in the general employ of the defendant, Mrs. McKinnon, and was acting in her behalf in making the delivery of the gasoline, his act in throwing the water on the gasoline causing it to splash against the stove, was beyond the scope of his employment, and hence not imputable to his employer. This contention, vigorously pressed, proceeds upon the theory that said act of the truck driver was the sole proximate cause of the injuries to the property. The argument is that it was no part of the truck driver's duty to act as a fireman, and in attempting to prevent an explosion and fire, he was rendering no service to his employer. A plausible answer would seem to be that said act of the driver merely enhanced and accelerated the risk involved in the dangerous condition created by the overflow of the gasoline, considered in connection with the presence of the lighted stove in the immediate vicinity. See, 65 C. J. S., Negligence, Sec. 111b, page 690. But we do not choose to adopt that theory. Our conclusion may be rested upon other grounds.

It is not controverted and could not be successfully, that the truck driver was negligent in causing the tank to overflow; that this occurred while he was acting within the scope of his employment and created a risk of harm to plaintiff's property. Assuming without de-

ciding that in dashing the water upon the gasoline he departed from the scope of his employment, that fact was not determinative in the defendant's favor. In that view, the act of the driver in that particular must be regarded as the act of a third party. Whether, apart from his primary negligence in causing the tank to overflow, this conduct of the driver could be properly considered as a negligent act in view of the emergency with which he was confronted, is a question with which we need not be concerned. This, because we are satisfied that it was not the proximate cause of the injuries in the legal sense. In any view of the evidence, it was not open to doubt that the overflowing of the tank was due to the negligence of the truck driver occurring while he was acting within the scope of his employment, and that this was a substantial factor in bringing about the injury. It was equally certain that his attempt to prevent the gasoline from reaching the open stove was a normal response to the emergency created by his negligent conduct. This being the case, the primary negligence of the driver in causing the overflow was the legal cause of the injury. Garis v. Eberling, 18 Tenn. App. 1, 71 S. W. (2d) 215; Brodie v. Miller, 24 Tenn. App. 316, 143 S. W. (2d) 1042; 38 Am. Jur. 739; Cf. Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 178 S. W. (2d) 756; Gannon v. Crichlow, 13 Tenn. App. 281; Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 211 S. W. (2d) 450.

The applicable rule as stated by an eminent authority is as follows. "Though there is an active force intervening after the defendant's act, the result will nevertheless be proximate if the defendant's act actively caused the intervening force. In such a case the defendant's force is really continuing in active operation by means of the force it stimulated into activity". Joseph H. Beale:

"The Proximate Consequences of an Act", Harvard Law Review, Vol. 33, No. 5, p. 646. The author gives a number of illustrations of the application of the rule which need not be repeated here.

In somewhat different language, the American Law Institute has stated the same rule as follows: "An intervening act of a human being or animal which is a normal response to the stimulant of a situation created by the actor's negligent conduct, is not a superseding cause of harm to another which the actor's conduct is a substantial factor in bringing about". Restatement of the Law of Torts, Sec. 443; see also, 65 C. J. S., Negligence, Sec. 111e, page 695; Cf. Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 178 S. W. (2d) 756; Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 27, 211 S. W. (2d) 450.

The defendant relies principally upon Kelly v. Louisiana Oil Refining Co., 167 Tenn. 101, 66 S. W. (2d) 997; and Shuck v. Carney, 22 Tenn App. 125, 118 S. W. (2d) 896.

In the first of these cases a servant of the defendant Oil Company was telephoning the Company office from a store where he was delivering gasoline, when he lit a cigarette and set fire to the plaintiff's clothes by throwing away a lighted match. The plaintiff was an employee of a cotton merchant and his clothing was covered with lint cotton, a very inflammable substance. The company was held not liable because the act of the employee in lighting his cigarette and throwing away the lighted match was not within the scope of his employment, since it was done with no intention to perform it as a part of or incident to a service or act for which servant was employed.

For the same reason this Court in the other case held the defendant not liable for the act of his servant where

it appeared that his foreman, while supervising efforts to extricate an overturned automobile from a ditch, after lighting a cigarette, threw the lighted match on the ground saturated with gasoline, causing a fire which destroyed the automobile.

The distinction between both of these cases and the present one is that in neither was the particular act of the servant immediately causing the injury provoked by the servant's prior negligence occurring while acting within the scope of his employment.

Error is assigned on the action of the Judge in charging the jury that, ''William Peewee Nickson was the agent of Mrs. McKinnon, and any negligent act on his part, if any, would be a negligent act on the part of Mrs. McKinnon''. This assignment may be considered together with two others challenging the action of the Judge in refusing to give two special requests submitted by the defendant, which were in substance (1) that if the jury found that Nickson in throwing water on the gasoline and floor was not acting within the scope of his employment, they should find for the defendant, and (2) that if they should find that Nickson's said act was the sole proximate cause of the injuries they should find for the defendant.

As we have held above, the proximate cause of the injuries to the property was the negligence of the defendant's servant in causing the tank to overflow. There was no room in the evidence, however viewed, for any difference of opinion about this proposition, nor did it leave any doubt about the fact that with respect to this particular activity the truck driver was acting within the scope of his employment. Hence the charge insofar as it could have been regarded as applying to the act of the driver in throwing the water on the gasoline, was harmless, because in the view we have taken that was not a deter-

minative fact insofar as Mrs. McKinnon's responsibility was concerned. She was liable regardless of whether that act was within or without the scope of the driver's employment. Hence there is no view of the case whereby it could be said that the instruction complained of was prejudicial to the defendant's rights. Code Sections 10653 and 10654. For the same reasons there was no reversible error in the action of the Court in declining to give the special requests above referred to.

■ Error is assigned on the action of the Judge in declining to give the following special request: "I charge you that if you find that a witness has testified falsely as to any material fact, that you may disregard the entire testimony of said witness."

We do not think this request contains a sound statement of the rule. Under it, if a witness were honestly mistaken with respect to one particular matter, the jury would be warranted in disregarding all of the remainder of his testimony even though there were no evidence to the contrary. This would be going too far. A false statement of a material fact does not authorize a jury to disregard the rest of his testimony where the falsehood is due to mistake and not to wilfulness. Garland v. Mayhall, 17 Tenn. App. 449, 453, 68 S. W. (2d) 482, and cases cited; see also, Frierson v. Galbraith, 80 Tenn. 129, 131. Since the request was not an accurate and complete statement of the rule, there is no view of the matter in which the Judge could be put in error for declining to give it. Kroger Grocery & Baking Co. v. Addington, 18 Tenn. App. 191, 74 S. W. (2d) 650; Morris v. Bolling, 31 Tenn. App. 577, 218 S. W. (2d) 754.

■ Complaint is made of the action of the Judge in admitting over the defendant's objection testimony of the witness Pinkerton with respect to the value of the filling

station and residence before and after the fire; and to the testimony of the witness Estes Mann as to the cost of rebuilding the property. The ground of these objections was that neither of the witnesses had ever inspected the property before the fire, and neither knew anything about the manner in which it was constructed, nor the arrangement of the rooms. Both witnesses qualified as experts and the grounds of the objection go not to the competency of the evidence but to the weight to be given to it. This answers the errors assigned on the refusal to give special requests requested by the defendant to the effect that there was no competent evidence as to the value of the property immediately before and after the fire, and none with respect to the cost of rebuilding the filling station and dwelling.

██ ██ The Judge also declined to charge the request of the defendant that there was no competent evidence as to the value of the personal property which was destroyed. This request was properly denied. Both the plaintiff and his wife testified as to the value of the personal property and their testimony was competent notwithstanding that neither qualified as an expert as to the market value of such articles. Pruitt v. Williams, 21 Tenn. App. 171, 178, 106 S. W. (2d) 892. The Judges also declined to charge at the request of the defendant that, ''If you should find that the value of some article of personal property is not what it is claimed to be by the plaintiff, you will diminish the value of the recovery by the amount of excess in said claim''. The jury were properly instructed in the general charge as to how they should arrive at the value of the personal property, and there was no justification, we think, for giving this self-evident proposition contained in the special request.

The remaining assignments question the charge of the Court on the measure of damages and his action in refusing to grant a special request dealing with that subject. Under the instructions of the Court, in returning their verdict, the jury divided the damages for loss as follows: loss of real property $5,500, loss of personal property $3,000, loss of merchandise $266, damage to compressor $77.50. In his general charge, the Court instructed the jury on the measure of damage as follows:

"In reference to the buildings, or real estate, the filling station and residence, as respect that loss the Court instructs you that the measure of damage is the difference between the value of the premises immediately before the fire and the value immediately after the fire, and in arriving at that result you would take into consideration the reasonable cost of restoring the property to its former condition, taking into consideration the age of the structures and the depreciation thereof."

The complaint about this instruction is voiced in the following language: "It did not instruct the jury that if they found the reasonable cost of restoring the property to its former condition was less than the difference in the value of the buildings immediately before and after the fire, that they should use the reasonable cost of reconstructing the building instead of the difference in the value before and after the fire in determining the amount of damages". In this connection the defendant submitted a special request asking that the jury be instructed that the measure of damages to the real estate was "the difference between the value of the premises immediately prior to the fire and the value immediately after the fire provided the cost of restoration was more than the depreciation and value, but if the reasonable cost of rebuilding the

building was less than the depreciation in value, then the cost of the rebuilding the buildings is the measure of damages". This request the Judge refused.

Anderson v. Miller, 96 Tenn. 35, 33 S. W. 615, 617, 31 L. R. A. 604, was an action to recover damages for the partial destruction by fire of a building owned by the plaintiff. It appearing that she had repaired her building, making it as valuable as before the fire, the Court charged the jury that the measure of damages was the reasonable cost of restoring the property to its former condition. In holding this correct, the Court said: "This does not mean, as argued by counsel, that it was the cost of a new building, the same as that destroyed, and the jury could not have so understood it; but the proper construction was that the building as restored, should be of equal value to that destroyed, taking age and depreciation into consideration.—In other words, to reinstate plaintiff as before the fire."

Aycock v. Nashville, Chattanooga & St. L. Ry. Co., 4 Tenn. App. 655, involved several actions to recover damage to the residence buildings of the plaintiffs, resulting from blasting done by the defendant. On the authority of 4 Sutherland on Damages, 4th Edition, Sec. 1018, page 3768, this Court held the rule to be substantially that embodied in the plaintiff's special request in the present case. In reaching this conclusion the Court said that the rule announced is "in harmony with the expressions of our Supreme Court on the general subject", citing Anderson v. Miller, supra, and other cases.

Southern Railway Co. v. Black Diamond Collieries, Inc., 9 Tenn. App. 225, was a suit for recovery for the destruction of one railroad bridge and damage to another. The Judge charged the jury what was equivalent to an instruction that the measure of damages would be the

actual value of the bridge at the time of its destruction, for if it were put up out of the same kind of material and workmanship and reasonable costs, that would be the actual value of the bridge which could not be arrived at without a consideration of the restoration costs. Upon the authority of Anderson v. Miller, supra, it was held that the instruction was not erroneous. It was insisted that while the restoration would be the proper measure of damages in the case of a bridge partially destroyed or damaged, this would not be so for the one wholly destroyed. The Court failed to see any reason for a distinction, saying that the rule of Anderson v. Miller applied in either case "even if there be any real distinction between the value of the bridge when it was destroyed or the cost of its restoration to the condition it was in when it was destroyed".

Murray v. Patterson, 18 Tenn. App. 30, 72 S. W. (2d) 558, 564, was an action for injuries to a building resulting from the collapse of a party wall. It was held that since the cost of restoration of the building would have been more than the depreciation in value, the true rule for measuring the damages "was the difference between the value of her premises immediately prior to the injury and the value immediately after the injury—in other words, the depreciation in value resulting from the injury", citing Aycock v. Nashville, Chattanooga & St. L. Railway Co., supra.

■ We think the Court was correct in instructing the jury that in arriving at the difference between the value of the premises immediately before and after the fire they could take into consideration the reasonable cost of restoring the property to its former condition allowing for depreciation. McCormick on Damages, 483, Sec. 126; 4 Sutherland on Damages, 2967, Sec. 1015; see, Southern

Oil Works v. Bickford, 82 Tenn. 651, 656; Note, 7 A. L. R. 277, 281.

But we also think that as requested by the defendant the jury should have been instructed that if they found the reasonable cost of restoring the property to its former condition was less than the difference in the value immediately before and after the fire, the reasonable cost of reconstruction would be the measure of damages.

But can the failure to grant the special request supplying the omission in the general charge be regarded as reversible error? Since the adoption of Code Section 10654 the mere probability of error is not sufficient to justify a reversal. It must affirmatively appear that the error affected the result. No presumption of prejudice is to be indulged from the mere fact that the error was committed. Thomason v. Trentham, 178 Tenn. 37, 154 S. W. (2d) 792, 138 A. L. R. 461; Getz v. Weiss, 25 Tenn. App. 520, 160 S. W. (2d) 438. A contrary view was expressed in the case of McAlester v. Monteverde, 22 Tenn. App. 14, 115 S. W. (2d) 257, in an opinion prepared by this writer for the Western Section of the Court, involving the alleged misconduct of a juror. This view proceeded upon the theory that it would be presumed that any error reasonably calculated to influence the jury did in fact do so. The subsequently decided case of Thomason v. Trentham, supra, made it clear that since the adoption of the act contained in Code Section 10654 this is no longer the rule.

The only evidence bearing upon the issue showed a difference in value before and after the fire of $7,700 and a minimum cost of restoring the buildings to their condition at tim of the fire, allowing for depreciation, of $7,571.47. The jury allowed as compensation for the injury to the buildings only $5,500.

██ Manifestly therefore the verdict was not affected by the failure of the Judge to instruct the jury in the particular embodied in the special request. Hence a reversal would not be justified on that account. Montgomery v. State, 135 Tenn. 577, 585, 188 S. W. 213; Columbia & Big Bigby Turnpike Co. v. English, 139 Tenn. 634, 639, 202 S. W. 925; Ballard v. Hutchinson, 169 Tenn. 370, 373, 87 S. W. (2d) 1017; City of Murfreesboro v. Haynes, 18 Tenn. App. 653, 659, 82 S. W. (2d) 236; and Cf. Murray v. Patterson, supra.

Upon the whole case we find no reversible error in the judgment. The result is that it is affirmed. The costs of the lower Court, as well as the costs of the appeal are adjudged against the plaintiff in error, Mrs. W. H. McKinnon.

Baptist and Swepston, JJ., concur.