BRODIE v. MILLER et al.—143 S. W. (2d) 1042.

Eastern Section. April 6, 1940.

Petition for Certiorari Denied by Supreme Court, October 6, 1940.

Vaughn Miller and Jere T. Tipton, both of Chattanooga, for plaintiff in error.

Strang, Fletcher & Carriger and John Chambliss, all of Chattanooga, for defendants in error.

PORTRUM, J. This is a suit for personal injuries brought by Mark Brodie, Jr., against George Silas, an operator of a public amusement hall in the City of Chattanooga, know as the "Blue Room," and Ralph E. Miller, Jr., a patron of the amusement hall, to collect damages for personal injuries received by Brodie at the hands of the patron, Ralph E. Miller, Jr., who, in a drunken rage, mistaking the plaintiff Brodie for another, shot and seriously injured him. Judgment was taken against Miller in the lower court from which there is no appeal, but as for the case against the proprietor Silas, the Circuit Judge directed a verdict in his favor, upon the theory that he committed no breach of duty owed to the plaintiff, who also was a patron of the hall, and from this judgment the plaintiff has appealed in error here for a review.

The amusement hall, known as the Blue Room, is located on the second floor of a building on Market Street in Chattanooga, and there is a stairway leading from the entrance on Market Street to the hall and a door at the entrance at the foot of the stairway. There is also another stairway leading from the amusement hall to the rear of the building and into the kitchen of a restaurant operating upon the first floor of the building, which restaurant is immediately under the hall. There is a bar in the hall from which is dispensed beer, wine, and soft drinks, and tables are upon the floor upon which food and sandwiches are served to the patrons along with the drinks. The central portion of the hall is used for dancing, and an orchestra furnishes the music.

The defendant Silas operates the hall and employs waitresses and a man by the name of Jimmie Williams, who is known as the "Bouncer," and whose duty it is to preserve order in the hall and protect the patrons. The closing hour of the hall is 1:00 a. m., when the dancing stops. The front entrance is locked against incoming patrons, and some of the lights are switched off, and the patrons who are served filter out at the completion of their meal or drinks.

The plaintiff Brodie and a friend, Miss Letha Andrews, had been to a skating party on the night of October 21, 1938, and about 12 or 12:30 a. m., upon their return, stopped at the Blue Room for beer and sandwiches; a few minutes thereafter, as the place was closing up and the patrons were preparing to leave, trouble broke out between Miller and one Jack King, both of whom were patrons of the Blue Room. Miller was standing at the bar drinking with King when King laid his cigarette upon the counter and Miller picked it up. King laid claim to the cigarette and Miller threw it in his face, and an altercation was about to take place when Silas and others intervened and separated them before any blows were struck. But Silas, fearing more serious trouble upon the street, detained Miller for a few minutes and sent King down the steps and out of the place. In five or ten minutes Miller was permitted to leave and he went down the back steps and came around the building to the front where King had lingered waiting for a friend, and in the meantime Silas and his "Bouncer" Williams with a waitress had come down the front steps for the purpose of preventing any trouble, anticipating that perhaps King had remained there. As they came out of the entrance Miller came around the corner of the building, and immediately renewed the controversy with King. Someone hollered to King to look out for Miller was advancing upon him with a knife. Silas grabbed Miller for the purpose of separating them as he had done before, but Miller jerked away from him and advanced upon King when Williams took hold of Miller and Miller used force to extricate himself for the purpose of attacking King, when Williams struck him over the head with a blackjack or billy stunning him but not subduing him, when he again hit him with the blackjack knocking him to the street. Miller got up and was very angry with Williams and threatened him, saying he would get even with him, and then proceeded across the street.

Silas and Williams then returned to the entrance, closing the door and locking it, and going up the steps to the hall. The waitress crossed over the street to the rear of Miller and saw him go to his car which was parked on the opposite side and take a pistol out of the car. Miller then recrossed the street to the entrance to the hall and finding it locked broke in the glass portion of the door and unlocked it, and mounted the steps. In the meantime a patron in the hall above had seen Miller crossing the street with the pistol

and had warned the patrons in the hall that he was coming, creating quite a commotion among the patrons. Williams, the "Bouncer," hearing this and knowing that Miller was angry with him, fled down the back steps and hid in the kitchen of the restaurant below.

Silas met Miller at the head of the steps, and cautioned him about creating any disturbance among the patrons, and since Williams had fled he did nothing else to restrain Miller which might have further infuriated him. When Miller appeared in the hall the plaintiff and the girl with the plaintiff attempted to flee down the back steps and had reached almost to the door at the landing when Miller, mistaking the plaintiff for Williams, began firing at him from the head of the steps, striking him twice and inflicting serious chest wounds. Miller then left the hall and returned to his car, getting in it and driving away and later returning to the police station where he gave himself up.

The defendant Silas and his employee Williams had theretofore requested Miller not to come to the hall since he had raised a disturbance over one of the waitresses there. But Miller had disregarded this request and had returned to the hall twenty-five or more times since the request but had created no further disturbance until the night in question.

Upon these facts the plaintiff bases his declaration. It contains two counts; the first is a common-law count grounded upon the duty of the proprietor of the public amusement hall to afford his patrons protection and to preserve order. And it is alleged that the proprietor did not use ordinary care for the protection of the plaintiff against the felonious assault of Miller upon the occasion, and that the conduct of Silas and the employee in attempting to perform this duty was negligent and aggravating instead of quieting the unruly patron.

The second count of the declaration is based upon the violation of a city ordinance. The ordinance is identified by its caption and number followed by this declaration.

"Among other provisions of said ordinance, it is declared by section 5 thereof to be unlawful for the proprietor of a place at which beer, wine, and such beverages as are covered by said ordinance or sold to be: 'Permit—disorderly persons . . . to make it a customary place of visitation or resort . . .'

"By section 9 thereof the violation of any of the provisions of this ordinance is declared to be a misdemeanor. The plaintiff avers that the defendant Miller was a disorderly person within the meaning of said ordinance and that the said defendant Silas permitted Miller to make the place a customary place of visitation or resort. . . ."

We can dispose of the count based upon the ordinance summarily. The only reference made to it and its contents in the bill of excep-

tions is the remarks made to the trial judge after the jury had retired and the argument was proceeding upon the motion for a directed verdict. The remarks are as follows:

"Mr. Tipton: There is a stipulation that the ordinance plead was in full force and effect on that date. This stipulation recites the copy is to be treated as the original.

"Mr. Carriger: That is right."

We must infer from this statement that the stipulation and copy of the ordinance were not introduced in evidence before the jury. This inference makes the required declaration, in the bill of exceptions, that it contains all the evidence, speak the truth, and saves the bill of exceptions from a fatal defect, for it must contain all the evidence to overcome the presumption that there was evidence before the trial judge which would sustain his holding. Thomas v. State, 109 Tenn., 684, 75 S. W., 1025; Lowry v. Southern Railway, 117 Tenn., 507, 101 S. W., 1157, 6 L. R. A. (N. S.), 887, 119 Am. St. Rep., 994; Southern Railway v. Crohm, 4 Tenn. Civ. App., 317; Pepper v. Telephone Co., 1 Tenn. App., 175.

The stipulation with a copy of the ordinance attached is in the transcript containing the technical record, but it is not a part of the bill of exceptions and authenticated by the signature of the trial court approving the bill of exceptions. It is not identified nor authenticated by the trial judge as is required where extraneous documents are sent up as a part of the bill of exceptions, and it is no part of the record upon review. Nashville Ry. Co. v. Martin, 117 Tenn., 698, 99 S. W., 367; Sherman v. State, 125 Tenn., 19, 140 S. W., 209; Cosmopolitan Life Ins. Co. v. Woodward, 7 Tenn. App., 394.

The question of the violation of the ordinance is not open to a review in this court.

The trial court took the view, assuming that the defendant Silas was negligent in not using ordinary care to protect the plaintiff, his patron, that under the facts as developed the defendant's negligence was not the proximate cause of the plaintiff's injury, and for this reason he directed a verdict in favor of the defendant. It is conceded that the proprietor of a public amusement place owes his patrons a duty to use ordinary care to protect them from other patrons or third persons. Weeks v. McNulty, 101 Tenn., 495, 48 S. W., 809, 43 L. R. A., 185, 70 Am. St. Rep., 693; Loew's, Etc., Corporation v. Durrett, 18 Tenn. App., 489, 79 S. W. (2d), 598; Mastad v. Swedish Brethren, 83 Minn., 40, 85 N. W., 913, 53 L. R. A., 803, 85 Am. St. Rep., 446.

But the negligent act of the proprietor in failing to use ordinary care must be the prime and proximate cause of the plaintiff's injury. The injury must flow directly from the negligent act

unbroken in the chain of sequence and must be an injury that can be normally anticipated.

"The proximate cause of the law is not the proximate cause of the logician, nor even always in strictness the proximate cause in fact, and a jury may easily be confused and misled by overniceties in these abstractions. . . . It is based on the principle that consequences which follow from the original wrong in unbroken sequence, without an intervening sufficient independent cause, are natural and proximate and for these the original wrongdoer is responsible." Merrill v. Los Angeles Gas Co., 158 Cal., 499, 503, 111 P., 534, 536, 31 L. R. A. (N. S.), 559, 139 Am. St. Rep., 134.

 Under the facts of this case we think the chain of sequence was broken, that when the proprietor returned to his place of business and locked the street door he acted with the precaution of the ordinarily prudent and intelligent person and that this act was one of due care for the protection of his patrons remaining in his hall. We do not think intelligent minds could charge him with greater care. The defendant argues that he locked the door because it was closing time, and the plaintiff says he locked the door to guard against the return of Miller. Giving the plaintiff this favorable inference to be drawn from the facts, nevertheless if he anticipated Miller's return, the law will not charge Silas with the onerous duty of anticipating that Miller will commit a felony and break in the locked door. And it is argued that Silas should have called a policeman to assist him, but this places the duty upon Silas of anticipating that Miller would commit a felony and break in the locked door. It was Silas' duty to exercise due care, and when he did it he was relieved from the exercise of extraordinary care.

Silas was not charged with the duty of anticipating that Miller would commit two felonies: First, break in the locked door of the establishment and, second, commit a felonious assault upon a patron. (Williams, the "Bouncer," had vacated the premises before Miller entered and it was Williams who was the object of the assault.) No man can anticipate that another person will mistake the identity of a person to be attacked and assault a third person. The rule is stated in Restatement of the Law of Tort as follows:

" 'Section 443. Dependent Intervening Force.

" 'An intervening act of a human being or animal which is a normal response to the stimulant of a situation created by the actor's negligent conduct, is not a superseding cause of harm to another which the actor's conduct is a substantial factor in bringing about.' "

 Miller's conduct in committing the felony cannot in the minds of intelligent people be classified as "a normal response to the stimulant of a situation created by the actor's negligent conduct." It was an abnormal response. If the defendant is to be held for such an abnormal response, he may be called upon to answer

for an injury sustained weeks or months later which is traceable to the malicious and felonious intent of the attacker engendered by the interference of the defendant in the altercation taking place on the night of the street fight. The law does not place the onerous duty upon a party of anticipating the criminal act of another unless they arise naturally and spontaneously from the act of the party. Cole v. German Savings Society, 8 Cir., 124 F., 113, 63 L. R. A., 416; Childrey v. Huntington, 34 W. Va., 457, 12 S. E., 536, 11 L. R. A., 313; Fraser v. Chicago Ry. Co., 101 Kan., 122, 165 P., 831, L. R. A., 1917F, 749; Brady v. Shepard, 43 App. Div., 24, 58 N. Y. S., 674.

 Lastly, it is insisted that the question of proximate cause is a jury question and whenever the question is doubtful or debatable, that the court should submit it to the jury. In support of this insistence the recent case of Jackson v. Lowenstein & Bros., 175 Tenn., 535, 136 S. W. (2d), 495, is cited. That was a case where the Supreme Court was reviewing a demurrer, and the court held that the declaration stated a cause of action, but the court did discuss the advisability of leaving the question of proximate cause to the jury when doubtful, using as an illustration an old English case where the judges divided. The remedy of leaving the doubtful questions to the jury does not seem to be adequate, for the court is better qualified to lay down the duties and responsibilities growing out of a conceded state of facts than the jury. We do not believe that it was intended by the discussion of the issue found in this case to change the practice in this state; here the trial judge is the witness of the law to the jury. And it is his duty to define the duties and responsibilities of the parties arising out of the theory of the plaintiff as well as of the defendant; the sole function of the jury is to decide the facts and to apply the principles as given them by the court.

Upon the day of the opinion of the Jackson case, supra, the Supreme Court handed down the case of Southeastern Greyhound Lines v. Groves, 175 Tenn., 584, 136 S. W. (2d), 512, 513, 127 A. L. R., 1378, in which it again announced the rule as follows: "Ordinarily, the proximate cause of an injury is for jury, but, where the facts are not controverted, the question of proximate or intervening cause is for trial court."

In the instant case the verdict was directed at the conclusion of the plaintiff's testimony, and there is no conflict in the testimony of the plaintiff's witnesses, and all favorable inferences have been given in favor of the plaintiff. The court can find no acts of negligence on the part of the defendant which is the proximate cause of the plaintiff's injury. The trial judge correctly directed the verdict in favor of the defendant, and his judgment is affirmed with costs.

McAmis and Ailor, JJ., concur.