Richard C. GREGORC, Appellant,

v.

LONDOFF COCKTAIL LOUNGE, Inc., A
Corporation, Respondent.

No. 46237

Supreme Court of Missouri,

Division No. 2.

July 14, 1958.

John J. Morris, Lusser & Morris, St. Louis, for appellant.

Alexander & Robertson, L. A. Robertson and Ernest E. Baker, St. Louis, for respondent.

STORCKMAN, Judge.

Plaintiff, while patronizing defendant's cocktail lounge, was wounded during an exchange of revolver fire between a police officer and another patron whom the officer was trying to disarm and arrest. Plaintiff sought damages for his personal injuries and obtained a judgment for $15,-000. The trial court sustained defendant's motion for a new trial on the ground that one of plaintiff's instructions was erroneous and the plaintiff appealed.

The defendant company operated the cocktail lounge at 2357 Palm Street in St. Louis where alcoholic beverages were dispensed and food was served. In a building adjoining the cocktail lounge bowling lanes were operated by an affiliated company. There was an inside door affording passage from one to the other of the two places of business without using the street entranceways. During the evening of Saturday, June 12, 1954, the plaintiff, his wife, and two friends, Carl M. Krueger and Byerd E. Kirk, went to the bowling lanes and practiced bowling until after midnight. At about 12:40 a. m. they quit bowling and went into the cocktail lounge, using the inside door, and sat at the first table they encountered after entering the barroom. After they had ordered beer and been served, Kirk called over the manager of the lounge, Harry Londoff, with whom Kirk was acquainted and introduced Mr. Londoff to the plaintiff and the others at the table. After a brief conversation the manager ordered a round of drinks "on the house" and left. Shortly thereafter the plaintiff and his companions observed a man, about 35 feet away, whom they later learned was Paul Baykowski, pointing a revolver at another man standing at the bar, facing Baykowski. The plaintiff testified he heard no loud talking or unusual noises; however, the man continued to hold the gun on the other for a period variously estimated at 15 to 20 minutes. During this interval plaintiff's wife left to attend their eleven year old boy who was asleep in their automobile on a parking lot and was not present when the shooting occurred. However, the three men, including the plaintiff, remained at the table.

During the evening of June 12 Paul Baykowski had been drinking whiskey highballs at the bar. He left the lounge before mid-

night without indicating that he intended to return. Shortly before closing time, which was 1:00 a. m., the manager, having locked the back door and turned off the outside lights, was preparing to lock the other street door when Baykowski appeared at the entrance. Londoff told Baykowski he was closing, but Baykowski, saying, "I know," pushed Londoff aside and went to the bar where Donald Syberg, another patron, was seated. Baykowski told Syberg to stand up, that he was going to shoot him. Syberg got to his feet and stood with his back to the bar. Baykowski stood opposite with a drawn revolver pointed at him. Baykowski asked Syberg what he was going to do with his, Baykowski's girl, Mary Brostoski, with whom Syberg had been associating during the evening. They "spoke back and forth about her." Syberg, on behalf of plaintiff, testified that Baykowski spoke in a loud voice, told him the type of pistol he had, that it was loaded and that he was going to use it. In this situation four persons tried to get Baykowski to put away his gun and leave. Two of them were employees of the defendant and two were bar customers. First the manager, Harry Londoff, a man 60 years of age, went to where Baykowski was holding Syberg at gun point and asked Baykowski to put away his gun and leave, but Baykowski did not heed him. Londoff then went into the kitchen, laid down on the floor, and did not return until after the shooting was over. Mary Brostoski, the girl in dispute, tried to get Paul to leave and he struck her, knocking her aside. Another customer, Stephan George, tried to get Baykowski to put up his gun, but was also pushed away. One of defendant's waitresses, Lillian Ann Nickelson, who had known Baykowski for some time, talked to Paul, at Mr. Londoff's request, but could not get him to put the gun away. Londoff had not known Baykowski prior to May 1, 1954, when the defendant took over the operation of the cocktail lounge.

This impasse continued for a period variously estimated at 15 to 20 minutes until the arrival of police officers who had been called by a customer at the request of one of defendant's waitresses. Sergeant Lee Soete of the Metropolitan Police Department of St. Louis entered the tavern through the entrance from the bowling lanes. As he stood with drawn gun behind the table at which the plaintiff was seated the officer saw Baykowski with his revolver pointed at Syberg. Sergeant Soete called to Baykowski to "Drop that gun" whereupon Baykowski turned and shot at the officer. Sergeant Soete returned the fire, shooting six times. Baykowski was wounded by five of the bullets. Two shots were fired from Baykowski's gun; one of them struck the plaintiff near the right nostril, knocking out a number of teeth, shattering his right lower jaw and lodging in his shoulder. Syberg was also wounded.

Plaintiff submitted his case to the jury on defendant's negligent failure to eject Paul Baykowski from the premises or to have warned the plaintiff. The instruction in question, plaintiff's Instruction No. 1, advised the jury that the defendant had a duty to exercise ordinary care for the reasonable protection of its patrons and that, if the jury found the plaintiff, while a patron of the defendant, was shot and injured by Paul Baykowski, "and if you further find that said Paul Baykowski did exhibit a gun there in the presence of other patrons and did for a period of time, from fifteen to twenty minutes, continue to exhibit said gun and to point said gun in and about said premises there; and if you further find that such conduct on the part of Paul Baykowski was dangerous to the safety of patrons in said premises there, and if you further find that said defendant knew or should have known of the aforesaid condition and behavior of said Paul Baykowski in time thereafter and before the aforesaid shooting for said defendant to have ejected said Paul Baykowski from said premises or to have warned plaintiff and that said defendant in the exercise of ordinary care could have done so, and that in

so failing if you find the defendant, its agents and employees, did fail, said defendant was negligent," and if such negligence caused plaintiff's injury while plaintiff was exercising ordinary care for his own safety, the verdict should be for the plaintiff.

■ The trial court sustained defendant's motion for a new trial on the ground the evidence did not justify the submission of either of the grounds of negligence; that is, the failure to warn the plaintiff or the failure to eject Baykowski. If there was no substantial evidence supporting the theories of negligence submitted, the instruction was erroneous and the grant of a new trial was proper. Hough v. Rapidair, Inc., Mo., 298 S.W.2d 378, 385–6(12); Behen v. St. Louis Transit Co., 186 Mo. 430, 85 S.W. 346, 349(4). Since the charges of negligence were submitted in the disjunctive, the instruction is erroneous if either of the assignments is not supported by substantial evidence. Green v. Guynes, Mo., 235 S.W.2d 298, 303(15).

■ The operator of a place of public resort is not an insurer of the safety of his business invitees, but his duty is to exercise the care of an ordinarily careful and prudent person to prevent his invitees being injured by other patrons or third persons. Hughes v. St. Louis National League Baseball Club, Inc., 359 Mo. 993, 224 S.W.2d 989, 994(9, 10); 65 C.J.S. Negligence § 45 c, p. 533; 86 C.J.S. Theaters & Shows § 41 c, p. 723; 52 Am. Jur. 296, Theaters, Shows, Exhibitions, etc., § 52.

■ While the standard of care is the same for a place of business where intoxicating liquor is sold and consumed, the exercise of such care must be adapted to the character of the business and must be commensurate with the conditions and circumstances involved in a particular situation. Hughes v. St. Louis National League Baseball Club, Inc., 359 Mo. 993, 224 S.W.

2d 989, 993(6); Peck v. Gerber, 154 Ore. 126, 59 P.2d 675, 678(3); Brodie v. Miller, 24 Tenn.App. 316, 143 S.W.2d 1042, 1045 (3); Annotation, 106 A.L.R. 1003.

■ As a general rule the proprietor of a place of public resort is subject to liability to his business invitees for injuries inflicted by the acts of other patrons or third persons if the proprietor by the exercise of reasonable care could have known that such acts were being done or were about to be done and could have protected his customers by controlling the conduct of the other persons or by giving an adequate warning so as to enable his customers to avoid the harm being threatened by third persons. Hughes v. St. Louis National League Baseball Club, Inc., 359 Mo. 993, 224 S.W.2d 989, 994(9); Hughes v. Coniglio, 147 Neb. 829, 25 N.W.2d 405, 408(7); Restatement of the Law of Torts, § 348. If a failure to warn tends to create a hazardous situation, then a duty exists to give a reasonably adequate warning. Restatement of the Law of Torts, § 301; 65 C.J.S. Negligence § 45 c, p. 533. On the other hand there is no duty to warn a business visitor of a danger or defect which is as obvious and well-known to the patron as to the operator of the business. Wattels v. Marre, Mo., 303 S.W.2d 9, 14(4); Dixon v. General Grocery Co., Mo., 293 S.W.2d 415, 419(3); Harper v. First National Bank of Kansas City, Mo., Mo., 196 S.W. 2d 265, 268(3); 65 C.J.S. Negligence § 50, pp. 544–545.

■ The essential facts hypothesized by this Instruction No. 1 are that Paul Baykowski exhibited a gun in the presence of the other patrons and that such conduct was dangerous to the safety of other patrons. This is the situation of which the plaintiff says he should have been warned. The weakness of this contention is that plaintiff's evidence establishes that he had all the information that could have been conveyed to him by the kind of warning that he contends should have been given.

Plaintiff and his companions, including his wife, all testified that they observed Baykowski holding the gun for between 15 and 20 minutes. Plaintiff first saw this shortly after manager Londoff left his table which was after he and his companions had been served their second and last drink. This was near closing time. The police officer arrived and the shooting occurred about 1:15 a. m. which was 15 minutes after closing time. While plaintiff concedes he saw the gun being held in this menacing position, he undertakes to avoid being charged with knowledge of a dangerous situation saying he had seen guns in bars before and that there was no disorder in the barroom. The answer to this is that the plaintiff had as much knowledge as any one of whatever peril there was in the situation. Whether Baykowski would fire his revolver no one knew, probably not even the gunman himself, and if he did fire no one could predict that it would only be in the direction of the object of his jealous rage. That it was a situation of danger and potential physical harm must have been known to the plaintiff. The means for escaping the perilous situation were readily available. He could have left before the shooting started by the same door that his wife used and through which the patron went who called the police. We hold as the trial court did that the plaintiff was aware that Paul Baykowski had a gun and that his conduct was dangerous to the safety of other patrons. The plaintiff was not entitled to be warned of that which he already knew.

It may be further noted the instruction does not require a finding that the plaintiff had no knowledge of the dangerous situation, a defect which has been held to be reversible error. Daggs v. Patsos, Mo.App., 260 S.W.2d 794, 798(5); Schwartz v. S. S. Kresge Co., 238 Mo.App. 1165, 185 S.W.2d 37, 40(6).

■ The trial court also correctly held that there was no evidence supporting the submission of negligence based on a failure of the defendant to eject Baykowski from the premises. Two of the defendant's employees, the manager and one of the waitresses, tried to get Baykowski to put away his gun and leave. Two other persons, patrons in the bar, also tried without success. One of them, Mary Brostoski, the girl to whom he claimed to be engaged, was shoved aside and struck by Baykowski, with his hand or the gun. All of the plaintiff's evidence, including that of Donald Syberg, the object of Baykowski's malevolence, and the waitress, Lillian Nickelson, tended to show that an attempt by defendant's employees to eject Baykowski presented no reasonable prospect of avoiding injury to them or others.

■ Defendant's duty of exercising reasonable care to protect its patrons from assaults by third persons does not require the doing of that which is foolhardy and reckless. The law does not demand that the defendant's employees risk their lives and the lives of others in the unequal task of trying to subdue and eject an infuriated patron armed with a loaded revolver and threatening to use it. See 52 Am.Jur. 260, Theaters, Shows, Exhibitions, etc., § 11. We conclude as did the trial court that it was error, in the circumstances of this case, to submit an issue of negligence predicated on the failure of the defendant's employees to eject the armed patron.

Our review is limited to the errors assigned with respect to Instruction No. 1 and we do not reach for decision any other question presented.

The order of the trial court is affirmed and the cause remanded.

All concur.