No. 42,075

BETTY STEVENSON, *Appellee* and *Cross-Appellant,* v. THE CITY OF KANSAS CITY; GUY BROWN, HARRY MILLER and KNOWLTON CARSON, as the Board of Trustees of the Memorial Building, *Appellees* and *Cross-Appellees,* and AMERICAN LEGION POST 83 and GEORGE SIMPSON, *Appellants* and *Cross-Appellees.*

(360 P. 2d 1)

Opinion filed March 4, 1961.

L. E. *Weeks* and *Miles D. Mustain,* both of Kansas City, argued the cause, and *J. E. Schroeder, L. O. Thomas, J. D. Lysaught, Richard Millsap, Robert H. Bingham,* and *Ervin G. Johnston,* all of Kansas City, were with them on the briefs for American Legion Post 83 and George Simpson, appellants and cross-appellees.

*James J. Lysaught,* special deputy city attorney, argued the cause, and *C. W. Brenneisen, Jr.,* city attorney, and *Willard L. Phillips,* special deputy city attorney, were with him on the briefs for the city of Kansas City and Guy Brown, Harry Miller and Knowlton Carson, as the board of trustees of the Memorial Building, appellees and cross-appellees.

*Marion C. Miller,* of Kansas City, argued the cause, and *Edward A. Benson, Jr.,* of Kansas City, and *Moss Silverforb,* of Kansas City, Mo., were with him on the briefs for Betty Stevenson, appellee and cross-appellant.

The opinion of the court was delivered by

ROBB, J.: This is an appeal by defendants, American Legion Post 83 and George Simpson, from that part of the trial court's order whereby their demurrers to plaintiff's amended petition were overruled, as well as a cross-appeal by plaintiff from the remainder of the same order whereby similar demurrers of the city of Kansas City and the board of trustees of the Memorial Building, were sustained.

The salient parts of the amended petition, hereafter referred to as the petition, are that on or about January 30, 1958, defendants were engaged in owning, using and operating the Memorial Building in Kansas City, Kansas, in which wrestling matches were conducted for the entertainment of the public which was admitted by sale of tickets. The wrestling matches were for profit and were held in a ring in the arena which was surrounded on three sides by graduated levels of seats for the paid spectators. Ramps and stairs were provided to give spectators access to various portions of the arena and the rest rooms.

Plaintiff, as a paid ticket holder, had a seat in the arena and at about 11:00 o'clock p. m. on January 30, 1958, she left her seat on the top back row of the upper floor of the arena to go to the ladies' rest room on the first floor. She walked to the ramp in the southeast corner of the arena and between the second and first floors along the south side of the building, plaintiff was physically and forcibly assaulted by an unidentified man holding some hard heavy metal object of several inches in length in his hand who said, "Give me that," and thereupon struck plaintiff and knocked her down against the wall, handrail, and floor of the ramp which caused her injuries.

The city of Kansas City owned, used and operated the building by virtue of G. S. 1949, 73-401, *et seq.*, and leased it to defendants, American Legion Post 83 and George Simpson by a written contract and lease, which was attached to the petition.

Next were alleged the extent of plaintiff's injuries and the resulting damages, as well as those of her husband but they need not be repeated because they are not necessary to a decision.

Finally, plaintiff claims that defendants' negligences, which were the proximate cause of her injury and damage, consisted of their failure to provide and furnish her with a safe place to attend the performance, to provide and maintain proper and sufficient police and guards near the place where the assault occurred, and their failure to have the ramps sufficiently lighted; that defendants were further negligent in permitting her assailant to be present bearing the heavy object with which he assaulted her without preventing the occurrence, and in failing to inspect persons as they entered the premises or to rescue plaintiff from the assault or intervene before she was harmed, and in failing to warn plaintiff of the hazard or danger of using the ramp.

The first question inquires whether any or all of the defendants were guilty of negligence, and the second whether each defendant's negligence was the proximate cause, or one of the proximate causes, of the assault on plaintiff which resulted in her injuries.

The general rules on negligence and proximate cause were fully set forth and discussed in *Hickert v. Wright,* 182 Kan. 100, 319 P. 2d 152, where the following paragraphs of the syllabus in *Shideler v. Habiger,* 172 Kan. 718, 243 P. 2d 211, were reiterated.

"The proximate or legal cause of an injury is that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.

"Natural and probable consequences are those which human foresight can anticipate because they happen so frequently they may be expected to recur.

"While it is not a necessary element of negligence that one charged with negligence should have been able to anticipate the precise injury sustained, a person is not charged with all possible consequences of his negligent acts. He is not responsible for a consequence which is merely possible according to occasional experience, but only for those consequences which are probable according to ordinary and usual experience. (Syl. ¶¶ 2, 3 and 4.)" (p. 108.)

Later in the Hickert opinion, the following rule from 65 C. J. S., Negligence, § 111, pp. 699, 670, was quoted:

"Defendant's negligence is too remote to constitute the proximate cause where an independent illegal, willful, malicious, or criminal act of a third per-

son, which could not reasonably have been foreseen, and without which such injury would not have been sustained, intervenes. A person is not bound to anticipate the malicious, willful, or criminal acts of others by which damage is inflicted. . . ." (p. 109.)

A well-reasoned discussion in the earlier case of *Cleghorn v. Thompson,* 62 Kan. 727, 64 Pac. 605, on the question as to what constitutes actionable negligence quoted the following pertinent legal statements:

"Now, a reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behaviour we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things. (Poll. Torts, 36.)"

"Where a man, proceeding in a lawful business, exercises reasonable care, the law does not make him an insurer of others against those consequences of his actions which reasonable care and foresight could not have prevented. The law justly ascribes such consequences to inevitable misfortune, or to the act of God, and leaves the harm resulting from them to be borne by him upon whom it falls. The contrary rule would obviously be against public policy, because it would impose so great a restraint upon freedom of action as materially to check human enterprise. (Thomp. Neg. 1234, 1235.)" (p. 730.)

The opinion in *Railway Co. v. Columbia,* 65 Kan. 390, 69 Pac. 338, restates an appropriate paragraph from *City of Allegheny v. Zimmerman,* 95 Pa. St. 287, 40 Am. Rep. 649, as follows:

"Negligence is not the proximate cause of an accident unless, under the circumstances, the accident was a probable as well as natural consequence thereof—one which might reasonably have been foreseen by a man of ordinary intelligence and prudence." (p. 398.)

Another case where there was an unrelated criminal act of an intruder whereby plaintiff was shot in the arm while discharging his duties as night watchman is *Fraser v. Railway Co.,* 101 Kan. 122, 165 Pac. 831, wherein this court explained:

"We all anticipate pocket picking when the circus comes, and housebreaking during fair week, but the circus and the fair are not the causes of such crimes. We know, too, that should a housebreaker be discovered in the act of committing burglary, he might do violence to a person interrupting his depredation. But if, knowing the city to be infested with such characters, we go out for the evening leaving the back door unlocked and leaving a servant in the house, omission to lock the door is not the cause of the burglary, should one occur, or the cause of injury to the servant who tries to intercept commission of the crime. The cause of injury originates with the burglar, whose entrance into the house was not obstructed by a locked door." (p. 127.)

Plaintiff in *Klish v. Alaskan Amusement Co.*, 153 Kan. 93, 109 P. 2d 75, was a spectator seated next to the aisle which became over-crowded and a concessionaire selling programs was thereby caused to fall and injure plaintiff by striking her in the back with one of his feet. The court held:

"While the proprietor of a place of public amusement is held to a stricter accountability for injury to patrons than owners of private premises generally, the rule is that he is not an insurer of the patrons, but owes them only what, under the particular circumstances, is ordinary and reasonable care." (Syl. ¶ 1.)

In the opinion it was stated:

"Here, the fact that Razook [the concessionaire] fell is no evidence of defendants' negligence." (p. 94.)

See, also, *Hickey v. Fox-Ozark Theatres Corp.*, 156 Kan. 137, syl. ¶ 1, 131 P. 2d 671.

The facts in the landmark case of *Rowell v. City of Wichita*, 162 Kan. 294, 176 P. 2d 590, were that the Thomas Hopkins Post of the American Legion held its annual fireworks display on July 3, 1945, at Lawrence stadium in Wichita; the concessionaires, consisting of a partnership, sold "mild" bottled beverages and food to the customers, who paid admissions; the heavy empty glass bottles were allowed to accumulate underfoot and became "vagrant," defendants had full knowledge of this and had made a rule requiring the use of paper cups, but the rule had been abated sometime prior to plaintiff's injury; plaintiff was struck on the head by an empty bottle when leaving the stadium on July 3, 1945. Applicable rules in cases of this kind were fully considered in the Rowell opinion and repetition here is unnecessary. However, the following is a particularly appropriate statement therefrom:

"A person who seeks redress does not make out a cause of action by showing only that he suffered injury, *but if not willfully done he must show that the act, as to him, had possibilities of danger so apparent as to entitle him to be protected against the doing of it* although the harm was unintended." (Emphasis supplied.) (p. 301.)

The recent case of *Huddleston v. Clark*, 186 Kan. 209, 349 P. 2d 888, discussed the proposition that the owner and operator of a public tavern is not an insurer of the patrons thereof. The pertinent facts disclosed a situation wherein a customer of a tavern became angry and profane when a waitress refused to sell beer to him. He was put out of the bar and as he left he threatened to return and shoot up the place. He had previously threatened to do this but

had never done so. This time, however, he came back, shot wildly into the tavern and two of the bullets struck plaintiff's arm. This court, after briefly stating the above rules, in substance concluded it was not shown that when the ejected customer, Donohue, left the defendants' tavern, either defendants or their employees believed there was a reasonable probability he would return with a gun and commit an assault on one or more of the customers of the tavern by his promiscuous shooting. The Huddleston case cited *Cale v. Johnson,* 177 Kan. 576, 280 P. 2d 588. There stock car races and hot rod races were held in a certain stadium where people paid admission to see them. The trial court sustained a demurrer to a second amended petition and this court affirmed, citing and adhering to the rules relied upon in the Klish and Hickey decisions. A rule of negligence from 86 C. J. S., Theaters & Shows, 716 § 39 (*b*), was therein quoted:

"One who collects a large number of people for gain or profit must be vigilant to protect them, and if the proprietor of a place of public amusement neglects his duty to use ordinary or reasonable care to put and keep the premises, appliances, and amusement devices in reasonably safe condition, ignorance of the fact that they are unsafe does not in any way affect his liability for injuries resulting from such conditions. However, this duty of active vigilance does not mean that an opportunity to discover and remedy the wrong is not to be afforded to the proprietor of a place of amusement before he is to be held liable. If, without action for which a proprietor is responsible, a dangerous condition arises, he is allowed a reasonable time to become informed of the danger and to take measures to remedy it, and, where the defect causing the injury was not known to the proprietor and could not have been discovered by him in the exercise of reasonable or ordinary care, he will not be liable. Knowledge, either actual or constructive, is essential to impose liability. . . ." (p. 580.)

Industrious counsel have cited many more of our decisions which we have considered but we do not deem it necessary to cover them. The decisions from foreign jurisdictions have not been covered because, as was pointed out in the Cale case, ". . . the general rule as to the liability of an owner or operator of a place of public amusement to patrons . . . is well-established in this jurisdiction." (p. 579.)

By its own contents and allegations, plaintiff's petition charges defendants with a degree of negligence that would tend to make them her insurers from the time she entered the Memorial Building until she departed therefrom, but no such duty is placed on the defendants when this case is tested by the foregoing authorities in our

jurisdiction. To apply such a high degree of vigilance would make a public amusement impossible because of the expense of guards, time for searching customers to discover possible weapons, etc.

To foresee that plaintiff while attending the wrestling matches would be assaulted at the hour of 11:00 p. m. at the particular spot on the particular ramp on the way to the particular rest room in the Memorial Building in Kansas City would indeed require imaginative foresight and such is not the type of foreseeability required under our law. Only the standard of the reasonable and prudent man, as set out above, is required.

The conclusion is that plaintiff's petition did not state a cause of action against any of the defendants. The trial court correctly sustained the demurrers of the city and the board of trustees of the Memorial Building, but erred in overruling the demurrers of American Legion Post 83 and George Simpson.

Appeal reversed and cross-appeal affirmed.