**James J. CORBITT, b/n/f and father Maurice Corbitt, and Maurice Corbitt, Individually, Appellees,**

**v.**

**RINGLEY-CROCKETT, INC., et al., Appellants.**

Court of Appeals of Tennessee, Western Section.

March 27, 1973.

Rehearing Denied April 27, 1973.

Certiorari Denied by Supreme Court July 2, 1973.

Fred H. Cagle, Jr., Knoxville, for appellants.

Joseph J. Levitt, Jr., William P. O'Neil, Knoxville, for appellees.

NEARN, Judge.

This is a defendants' appeal from an adverse jury verdict.

Plaintiff, James J. Corbitt, a minor 17 years of age at the time of his injuries, attended the James Brown "rock" or "soul" performance at the Civic Coliseum on October 3, 1970, in Knoxville, Tennessee. While so attending, it became necessary that plaintiff use the restroom facilities at the Coliseum. Plaintiff was beaten and robbed after entering the men's restroom.

Suit was filed by Maurice Corbitt, father and next friend of James J. Corbitt, for his son's personal injuries and for medical expenses incurred by the father. Judgment was sought against Ringley-Crockett, Inc., the promoter of the performance, and against the City of Knoxville which municipality owned the Coliseum and had leased it to Ringley-Crockett, Inc. for the performance.

The Complaint alleged that it was the duty of the defendants to maintain order and to protect the persons and property of the patrons who paid the admission fee for the entertainment. Further, that defendant

Ringley-Crockett, Inc., by the terms of its lease agreement with the Coliseum authorities, had agreed to furnish the necessary police protection to protect patrons; but that such duty was a non-delegable one and consequently both defendants would be liable for the negligence involved. The principal alleged negligence of the defendants was that they knew, or by the exercise of ordinary care should have known, that there would be numerous unruly persons attending the performance and that they failed to see to it that the halls and approaches to the Auditorium and especially the restrooms, were adequately or reasonably patrolled or guarded.

The defendants averred that the premises were adequately patrolled or guarded and denied all negligence.

Defendants' motions for directed verdicts at the close of proof were overruled and the jury returned a verdict for the minor in the amount of $2,000.00 and for the father in the amount of $1,000.00.

Eight Assignments of Error are made in this Court. The first five, collectively, raise but one Assignment of Error and that is: The proof is insufficient, as a matter of law, to warrant a jury finding favorable to the plaintiff and that Judge should have so preemptorily instructed the jury. The remaining three Assignments of Error are addressed to the charge of the Court.

The plaintiff's proof showed that on the day of the assault, plaintiff who had purchased a ticket to the James Brown performance attended same in the company of friends. The proof also shows that the audience was racially mixed with a predominance of those of the Negro race in attendance. Plaintiff is of the Caucasian race.[1] Plaintiff testified that after he and his friends had obtained their seats, it became necessary for plaintiff to use the restroom. This was shortly before intermission time. Plaintiff proceeded to the restroom and upon entering noticed three Negro young men in the restroom, ostensibly washing their hands. Plaintiff testified that he felt no apprehension of danger nor was concerned about the presence of others. As the plaintiff entered one of the stalls in the restroom, he was struck on the head and knocked to the floor. As plaintiff attempted to crawl out of the stall, he momentarily lost consciousness and when he regained consciousness, there were two Negroes standing in front of him who told him to empty his pockets or they would shoot him. Plaintiff emptied his pockets of the seventy-five cents that was in them; his assailants picked up the money and then kicked him in the face. Whereupon, plaintiff again momentarily lost consciousness and upon regaining consciousness found himself being held by two police officers and found that two of his assailants were still in the restroom. According to the plaintiff's testimony, the entire assault and robbery took place in just a matter of minutes.

Both the plaintiff and his witnesses testified that they had never before heard of occurrence of an assault and robbery in the restroom area of the Coliseum. The defendants' proof showed that no such occurrence had ever before taken place in the Coliseum regardless of the racial make-up of the crowd, although on occasions at athletic events members of the audience, regardless of race, might have differences of opinion which might result in fisticuffs between the disagreers, or occasionally a drunk might get boisterous or rowdy. Also, no such occurrence as that com-

1. Although great stress is made in the appellee's brief of the racial make-up of the audience, there is absolutely no proof of the occurrence of any disturbance of a racial nature. In fact, plaintiff testified that prior to his going to the restroom everyone in attendance was be-having themselves satisfactorily. One witness for the plaintiff testified that several Negro youngsters asked him for money so that their little brother could get in to see the show. The witness refused the request and walked off with nothing further being said or done.

plained of has ever happened at any James Brown performance.

Regarding the number of police or special officers on duty at the Coliseum, the plaintiff and his witnesses testified that prior to the assault on the plaintiff, they noticed none or few on duty. In other words, if the officers were present, they didn't see them. However, it is admitted that officers were present in the restroom almost immediately after the assault. The proof of the defendants is unimpeached that there were at least seventeen officers on duty that night roaming the Coliseum, but none were permanently stationed in the restrooms, although periodic inspections were made thereof by the officers on their rounds.

■ Much of the proof presented concerns how the investigation of the robbery was "bungled" (plaintiff's) by the officers and how it was properly (defendants') handled by the officers. We are of the opinion that this proof is entirely immaterial to the issue of defendants' alleged negligence in allowing plaintiff to be waylaid and robbed. Also, there is proof that after plaintiff left the Coliseum to be taken to the hospital, the audience began dancing in the aisles and became exuberant, but no injuries were reported. Again, we think this proof is entirely immaterial to the issue. Neither the plaintiff nor anyone else was injured by a boisterous crowd which defendant failed to control. Plaintiff was injured by the sudden criminal acts of third parties.

■■ The proprietor of a public amusement place owes his patrons a duty to use ordinary care to protect them from defects in the premises and to use ordinary care to protect them from other patrons or third persons. Brodie v. Miller (1940 E.S.), 24 Tenn.App. 316, 143 S.W.2d 1042. Whenever the injuries are the result of the acts of another, operators of places of amusement are not liable for such acts and resulting injuries in the absence of a showing of timely notice of the situation creating the danger. Ford v. Brandan (1962 E.S.), 51 Tenn.App. 338, 367 S.W.2d 481.

■ In 29 A.L.R.2d commencing at page 911 under the heading "Liability of owner or operator of theater or other amusement for assault on patron by another patron" will be found an excellent annotation on the subject. From a study of the reported cases, it would seem that in those cases where there is an unprovoked assault, committed without warning, by third persons, the owner is not liable for the injuries so sustained. We are of the opinion that such is the law of this State as evidenced by Brodie v. Miller and Ford v. Brandan, supra. This does not mean that the owner will automatically escape liability in every case of sudden assault on a patron by a third party. Even though the assault be sudden, if the owner could reasonably anticipate such an assault under the facts and fails to attempt to prevent it, he may be held liable. See Brodie v. Miller, supra.

Because an act is committed suddenly, it does not necessarily follow that it was committed without warning. The firing of a pistol takes but an instant, but in many cases there are ample warnings before the actual violence takes place.

In those cases such as Rawson v. Massachusetts Operating Co., 328 Mass. 558, 105 N.E.2d 220, 29 A.L.R.2d 907, wherein recovery against the owner of a place of amusement has been allowed for injuries sustained by a patron at the hands of a third party, there is proof that for a considerable period of time a warning of some sort of the danger had manifested itself and the owner, therefore, knew or should have known of the danger and done something to avoid the assault and protect the patrons. We are unable to find any case where recovery has been allowed for injuries willfully perpetrated by a third party without any type of warning whatsoever. If we were to find such a case, we would not be persuaded by it.

So, the question that will determine the first five Assignments of Error is whether

or not there is any proof in this record from which it can be said from the facts that the owner or lessee of the Coliseum in Knoxville reasonably knew or should have known of the probability of an occurrence such as the one which caused plaintiff's injuries. We are of the opinion there is not.

In order for plaintiff to recover in this case, the proof must be such so that it can be said that it was reasonably foreseeable by the defendants that the plaintiff would be waylaid and robbed in the restroom. Reviewing the proof in the light most favorable to plaintiff as we must, D. M. Rose & Co. v. Snyder (1947), 185 Tenn. 499, 206 S.W.2d 897, we are unable to find proof that would warrant such a conclusion. All of the proof shows that such an occurrence as complained of had never before happened in the Coliseum. Previous non-occurrence of an event, standing alone, does not necessarily mean that such event is not foreseeable. However, in the instant case, coupled with the previous non-occurrence there is the uncontradicted fact that the injury was caused by the sudden criminal attack of third persons, without any warning to the plaintiff or to anyone else. In Brodie v. Miller, supra, it was held that the law does not place the onerous duty upon an owner of anticipating the criminal acts of another, unless the criminal act is the natural and spontaneous result of the act or failure to act of the owner. The criminal act complained of by the plaintiff in this case cannot be said to be the natural or normal result of any act of the defendants. From the proof it was an abnormal thing to happen in the Coliseum and certainly was not an immediate or spontaneous result of any act or failure to act of the defendants.

In the case of Hart v. Hercules Theatre Corporation (1940), 258 App.Div. 537, 17 N.Y.S.2d 441, the New York Court was faced with an almost identical problem as we now are. As we see it, the principal distinction in that case from the instant case is that it involved a female in the ladies' restroom instead of a male in the men's restroom. The plaintiff had gone to the ladies' restroom at a movie theater, and after entering was struck and robbed of her purse. Recovery was denied on the basis that there had been no showing of notice of the danger to the owner. The Court commented that there was no proof of prior attacks and although plaintiff had viewed her assailant prior to her entry in the restroom there was nothing to arouse her suspicions and herself had anticipated no danger. The Court further commented that "To assume that the presence of a matron in the ladies' room would have prevented the assault is merely to speculate upon the degree of criminality possessed by the thief."

In Stevenson v. Kansas City (1961), 187 Kan. 705, 360 P.2d 1, the Supreme Court of Kansas was also faced with a situation similar to that created by the instant case. In the *Stevenson* case, plaintiff had been to wrestling matches and was struck and robbed while on the way to the restroom. The plaintiff's pleadings alleged that the defendants had failed to furnish sufficient police and guards near the place where she was assaulted. The Court held there could be no cause of action, mainly on the basis that to hold otherwise would render the owner an insurer, for it would be impossible to furnish every patron a guard at all times and places.

A similar result on similar facts was reached by the Appellate Court of the District of Columbia in the case of Nash v. Stanley Warner Management Corp. (1960), 165 A.2d 238.

The Supreme Court of our adjacent sister State of Arkansas has also been confronted with a case very similar to the instant one. In the case of Twin City Amusement Company v. Salater (1963), 237 Ark. 206, 372 S.W.2d 224, the plaintiff had been injured while attending a rock and roll concert at the Coliseum at Little Rock. The audience was racially mixed. The plaintiff was white and the assailants

were black. The defendants occupied the same lessor-lessee status as in the instant case under an almost identical lease agreement. The injuries complained of occurred on the parking area instead of a restroom or corridor. However, the particular location on the premises was of no great importance as recovery was denied on the basis that the attack "was a sudden, unexpected and unforeseeable affray." The Court quoted favorably from Stevenson v. Kansas City, supra, as follows:

"To foresee that plaintiff while attending the wrestling matches would be assaulted at the hour of 11:00 p. m. at the particular spot on the particular ramp on the way to the particular rest room in the Memorial Building in Kansas City would indeed require imaginative foresight and such is not type of foreseeability required under our law. Only the standard of the reasonable and prudent man, * * * is required."

It should be noted that a very well reasoned dissent by Justice McFaddin will be found accompanying the opinion of the majority of the Arkansas Court. However, the basis for the dissent was a disagreement over the facts of the case. The dissenter was of the opinion that the plaintiff's proof showed evidence of previous disturbances and fights on the day of the injuries which, in Justice McFaddin's opinion, made an issue for jury determination of whether or not the defendants exercised reasonable care after having been forewarned by previous events of the likelihood of further disturbances. Even though there was a disagreement over the facts, it would seem that the entire Court was of the opinion that absent a showing of some tangible occurrences which could be said to place the owner on notice of impending assaults or disturbances, there can be no recovery.

We can find nothing in this record which would suggest to the defendants that more guards were necessary than were provided, or for that matter, there is nothing in the record which shows that more guards could have prevented the injuries to plaintiff. It is an easy thing to say after the fact that a guard should have been at a certain place and at a certain time, but the owner is not charged with a duty to be clairvoyant. See Ward v. University of South (1962), 209 Tenn. 412, 354 S.W.2d 246.

■ We hold that if the owner is to be held liable for the sudden criminal acts of third persons there must be a showing that the owner was on notice in some manner of the imminent probability of the act. Otherwise, there can be no issue for jury determination. There is no such showing in this record. The Trial Court should have directed a verdict for the defendants.

We do not reach the Assignments of Error directed to the Trial Court's charge.

For the reasons stated, the judgment below is reversed and the case dismissed, with costs below and of appeal adjudged against appellee.

CARNEY, P. J., and MATHERNE, J., concur.

## OPINION ON PETITION TO REHEAR

NEARN, Judge.

A courteous Petition to Rehear has been filed by counsel for plaintiffs.

The Petition calls to the attention of the Court the case of Railroad v. Hatch (1906), 116 Tenn. 580, 94 S.W. 671 which was not cited in any of the briefs. The Petition states that the case came to the attention of counsel only the day after the receipt of the Court's Opinion in this matter.

It is the argument of petitioner that Railroad v. Hatch, supra, is the decisive authority and that Supreme Court decision is contrary to our ruling in the instant case.

In the newly cited case, a jury verdict had been entered against the defendants which was sought to be reversed on appeal. Plaintiff was a female passenger on a Pullman car operated by the railroad. While occupying the status of a passenger, in the Pullman car, plaintiff was accosted and insulted by certain crude male passengers and the jury compensated her for her injuries. At the time plaintiff was accosted neither the Conductor nor the Porter were present nor anywhere near. The question on appeal was whether or not from such fact the jury could conclude the defendants were negligent in their duty to plaintiff. The Supreme Court first reaffirmed the law to be that if there is no proof of circumstances which would create in reasonable minds an apprehension of danger, there can be no liability resulting from the unforewarned danger. We certainly did no violence to that principle in our Opinion in this case, but it is the argument of petitioner that the facts of the instant case are analogous to the facts of the *Hatch* case which facts would, as they did in *Hatch*, create an exception to the announced general rule. We must disagree for we are of the opinion that the facts are not analogous. First, in the *Hatch* case it was the duty of the defendants because of the passenger relationship to have some attendant at a particular place, that is, in the railroad car. The persons who were supposed to discharge this duty had abandoned their post and absented themselves for approximately two hours. Therefore, one who has a duty to be at a particular place at a particular time cannot escape liability on the basis of lack of knowledge or warning of a danger, when the very reason he is ignorant of the warnings or danger is because of the negligence of abandoning the post.

In the instant case, the defendants were under no duty to maintain a security officer in the restrooms at all times and in appellee's brief, it was never contended that such duty was upon the defendants.

The Petition to Rehear is respectfully denied.

CARNEY, P. J., and MATHERNE, J., concur.