IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

# DON SMITH, v. KEYPORT SELF-STORAGE, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 77583-8 T.D.      D'Army Bailey, Judge**

---

**No. W1998-00810-COA-R3-CV - Decided May 5, 2000**

---

This is a negligent supervision lawsuit. The plaintiff rented a unit from the defendants' self-storage facility. An employee of the self-storage facility stole the plaintiff's property and disappeared. The plaintiff sued the storage facility and its owners, alleging negligent supervision of the dishonest employee. A jury found in favor of the plaintiff and awarded compensatory damages. The defendants appeal. We reverse, finding that the plaintiff submitted insufficient evidence to support a finding of negligent supervision.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Reversed.**

LILLARD, J., delivered the opinion of the court, in which HIGHERS, J., and FARMER, J., joined.

Carol Mills Hayden, Memphis, Tennessee, for the appellants, Keyport Self-Storage, et al.

Samuel Jones, Memphis, Tennessee, for the appellee, Don Smith.

## OPINION

In 1992, Plaintiff/Appellee Don Smith ("Smith"), leased a self-storage unit from Defendant/Appellant Keyport Self-Storage ("Keyport"). Smith placed in storage his family's household's worth of furniture, furnishings, clothing, and other miscellaneous personal property. Keyport, located on Gateway Drive in Memphis, Tennessee, was owned by Defendants/Appellants Charles Gilman ("Gilman") and Jerry Wilson ("Wilson"), both of Oklahoma. The facility was operated by resident-managers Dan and Maxine Swartz, ("Mr. Swartz" and "Mrs. Swartz"), who lived in an on-site apartment.

In late December 1993, Mr. Swartz was killed and Mrs. Swartz's throat was cut during a robbery at the Keyport facility. As a consequence, Keyport was closed for several days. On the fourth day after the robbery, the Swartzs' granddaughter, Velvet Royal ("Royal"), approached Wilson and offered to operate the facility for him until he could find a permanent replacement for her grandparents. Royal told Wilson that she had helped her grandparents at the facility, and therefore was familiar with the way the business was run.

Before accepting Royal's offer, Wilson called Gilman in Oklahoma. Gilman told Wilson that he had talked to Royal on one occasion in the past when Royal answered Keyport's phone for her grandparents. At that time, Mrs. Swartz informed Gilman that Royal was her granddaughter, and that she and Mr. Swartz were paying her, out of their own pocket, to assist them at Keyport. Based on this information, Wilson and Gilman decided to hire Royal on a temporary basis, in order to keep Keyport open and operational while they searched for a permanent manager. In late February 1994, a couple by the name of Oberly was hired as permanent managers, and Royal's employment ended. Royal left when the new managers came on board. She did not train the Oberlys. Royal's whereabouts thereafter were unknown.

Soon after the Oberlys began their employment, Smith and other renters of Keyport storage units discovered that property had been stolen from their storage units. Some of the missing property was found in storage units that Royal had used during her employment. However, by the time the stolen items were found in her storage units, Royal had disappeared.

Smith filed suit against Keyport and Keyport's owners, Wilson and Gilman. Smith's complaint asserted a number of different theories for recovery, including breach of contract, violation of the Tennessee Consumer Protection law, respondeat superior, and negligence based on the failure to adequately supervise their employee. The trial court granted partial summary judgment to the defendants on all claims except for those based on the defendants' responsibility for Royal's action, stating that "for Plaintiff to prevail, he must establish that the acts of Velvet Royal are attributable to the named Defendants under Tennessee law so as to render them liable for the actions of Velvet Royal, an unnamed party to this litigation."

At trial, Smith testified that he went to Keyport in late December 1993, to check on his property, after he heard news reports of the robbery and murder. Smith testified that Royal and her boyfriend accompanied him to his unit to check on his possessions. He noted nothing amiss at that time.

Smith testified that he learned his property had been stolen after the Oberlys had begun their employment, when his wife discovered that their storage unit had been rented to someone else. Smith then came to Keyport. The Oberlys located Smith's rental record "hidden" in the "dead file." At Smith's request, the Oberlys called the police. When the police arrived and the lock on Smith's storage unit was cut, Smith discovered all his property gone, and the unit filled with someone else's possessions.

The only police report of the theft was dated March 3, 1994. However, Smith testified that he first learned that his property was missing, and reported the theft to the police, on January 12, 1994, or "somewhere right in that time frame," after the Oberlys called the police. When questioned on the discrepancy in the dates, he explained that he had called the police on three different occasions, and that they must not have made out a report for their first visit. There was no evidence that Wilson or Gilman had knowledge of any theft prior to the Oberly's employment in February 1994, after Royal had left.

Smith testified that the Oberlys showed him Keyport rental records which listed six to eight storage units under Royal's name. Smith and the Oberlys searched these units and found one of Smith's television sets in one of them. Smith testified that the Oberlys said that other renters had told them of seeing Royal taking things out of the facility in rental trucks. There was no evidence that Wilson or Gilman were aware of Royal removing large quantities of items from Keyport.

Another renter at Keyport, Ronald Stanton ("Stanton"), testified that on March 2, 1994, he learned that his property had been stolen from his unit. Part of Stanton's bedroom suite was discovered in a storage unit under Royal's name. Stanton noted four or five units listed under Royal's name. Stanton said that the Oberlys told him that Royal was only supposed to have one storage unit.

At the close of the Plaintiff's case in chief, the defendants moved for a directed verdict, arguing there was no evidence that Royal's theft was foreseeable. This motion was denied.

Keyport owner Charles Gilman testified that he and Wilson had hired Royal as a "stop gap" measure to keep the facility operational until they could find a permanent manager to replace her grandparents. They hired her because of her knowledge of the business, and because her grandmother had vouched for her. Gilman said that at the time Royal's employment ended in late February, when the Oberlys were hired, he had not received any complaints about stolen property, and that there had been no indication that she might steal. Gilman stated that Keyport's policy was to allow each employee the use of one storage unit without charge, but that there was no policy limiting the number of additional units an employee could rent. Gilman testified that he had been unable to find any record of Royal having any storage units in her name, or of her having made rental payments on any units. Gilman testified that all of the Swartzs' furniture had been placed in storage, and that Royal, as the Swartzs' granddaughter, would have had access to those units.

The defendants also presented evidence that Velvet Royal had no criminal record. Before the case was submitted to the jury, the defendants moved for a directed verdict. This motion was denied.

The jury found in favor of the plaintiff, and awarded damages of $50,000. The defendants made a motion for judgment in accordance with their motion for a directed verdict. This was denied. The defendants then filed a motion for a new trial or a remittitur. The trial court denied this motion as well, and entered the jury verdict. The defendants now appeal.

On appeal, Keyport asserts that the trial court erred in refusing to direct a verdict for the defendants, arguing that there was no evidence to support a finding that Keyport was liable for Royal's theft of Smith's property. Keyport also argues that the evidence was insufficient to establish damages, and that the trial court erred in permitting Smith to continue his testimony after conferring with his lawyer during a recess, in not granting a mistrial after a witness' reference to settlement negotiations with the defendants' insurance carrier, in permitting Smith's attorney to argue outside

the proof, and that the jury instructions were erroneous. We address first Keyport's argument that the trial court erred in refusing to direct a verdict in the defendants' favor.

Keyport argues that the defendants cannot be found liable under the doctrine of respondeat superior because the theft of property by Royal was a criminal action outside the scope of her employment. Keyport also argues that they cannot be held liable for negligence because there was no proof that Royal's action was a reasonably foreseeable event, which they could have taken steps to prevent. Smith did not submit a brief on appeal.

In considering a motion for directed verdict, both the trial court and the reviewing court on appeal must look to all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, and allow all reasonable inferences in favor of that party. The court must discard all countervailing evidence, and if there is then any dispute as to any material fact, or any doubt as to the conclusions to be drawn from the evidence as a whole, the motion must be denied. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995). If, after viewing the evidence in the light most favorable to Smith, we find that there was any material evidence in the record that would support a verdict for Smith under any of the theories advanced at trial, we must affirm the trial court's denial of the defendants' motion. *Id.*; *Conatser*, 920 S.W.2d at 647.

The trial court's grant of partial summary judgment to the defendants limited the plaintiff to theories of liability based on the defendants' responsibility, under Tennessee law, for the intentional acts of Royal. The trial court's order granting partial summary judgment states:

> That during that [sic] this motion hearing, counsel for Plaintiff asserted that the Plaintiff's theory of recovery would be based on the intentional acts of a person identified as Velvet Royal. It shall be determined through this order that Plaintiff's basis for moving forward with this suit and the only matter to be presented to the jury will be their allegations that the conduct of Velvet Royal led to the Plaintiff's claims of loss of personal property. That for Plaintiff to prevail, he must establish that the acts of Velvet Royal are attributable to the named Defendants under Tennessee law so as to render them liable for the actions of Velvet Royal, an unnamed party to this litigation.

Smith's only possible theories of liability, therefore, were based on negligent supervision and the doctrine of respondeat superior.

An employer can be held vicariously liable for the torts of an employee under the doctrine of respondeat superior only if the employee acted on the employer's business, within the scope of his employment. *Tennessee Farmers Mut. Ins. Co. v. American Mut. Liability Co.*, 840 S.W.2d 933, 936 (Tenn. Ct. App. 1992). There is no indication in the record that Royal's intentional act of theft was within the scope of her employment with Keyport. Since no evidence was submitted from

which a jury could reasonably find that Royal's theft was within the scope of her employment, the trial court erred in refusing to direct a verdict in the defendants' favor on this theory.

Smith also asserted a claim based on the defendants' negligence in failing to adequately supervise Royal's actions. A plaintiff may recover for harm caused by the intentional act of the defendant's employee, committed outside the scope of the employee's employment, under a theory of negligent supervision. *Hays v. Patton-Tully Transp. Co.*, 844 F. Supp. 1221, 1222 (W.D. Tenn. 1993). The harm caused by the employee's action must have been foreseeable to the employer. *Id.* A defendant is only under a duty to act to prevent injury from a harm that is foreseeable. If the harm that occurred was not foreseeable, then no duty exists, and no negligence can be found. *Id.*; *Doe v. Linder Construction Co., Inc.*, 845 S.W.2d 173, 178 (Tenn. 1992).

*Linder Construction Co.* involved negligence based on the plaintiff's injury from the criminal action of a third party. *Linder,* 845 S.W.2d at 175. The plaintiff in *Linder* was a woman who was raped in her home shortly after she purchased it from the defendant, a builder-seller of new homes in a planned development. *Id*. One of the rapists was an independent contractor who had been hired by the defendant to paint and hang wallpaper. The men gained entry to the plaintiff's home by use of a pass key, which the painter took from the defendant's realty office. *Id*. at 176. The plaintiff sued the defendant, asserting that it had negligently maintained the pass key.

In *Linder*, the Tennessee Supreme Court discussed when a risk may be considered foreseeable:

> [A] risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom a duty is owed is probable. Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. Foreseeability must be determined as of the time of the acts or omissions claimed to be negligent.

*Id.* at 178. Evidence showed that the defendant was aware that the painter had three convictions for D.U.I. and occasionally used drugs. The Court found that evidence of alcohol abuse and drug use was insufficient to put the defendant on notice that the painter would commit a violent attack. *Id.* at 179-80. The Supreme Court held that the attack on the plaintiff was not foreseeable, in the absence of evidence that showed that the defendant reasonably knew or should have known of the probability of an act such as rape. The Court stated:

> The pertinent question is whether there was any showing from which it can be said that the defendants reasonably knew or should have known of the probability of an occurrence such as the one which caused the plaintiff's injuries. Analysis of "all the circumstances" of this case shows that there was no reasonable basis on which to foresee any danger to the plaintiff.

***Id.*** at 178-79 (quoting ***Corbitt v. Ringley-Crockett, Inc.***, 496 S.W.2d 914, 918 (Tenn. Ct. App. 1973)).

In this case, the evidence presented on the issue of foreseeability was simply that Royal had utilized several storage units during her employment. The evidence was undisputed that Keyport's policies did not prohibit an employee from renting more than one unit. In addition, the Swartzs' belongings were being stored, which gave Royal reason to access more than one unit. While there was some evidence that Royal was seen transporting truckloads of items from Keyport, there was no evidence that Wilson or Gilman knew or should have known of this. The evidence was undisputed that Royal had no criminal record and that neither Wilson nor Gilman knew of any theft until after Royal's employment had ended and her whereabouts were unknown.

Therefore, based on the record, we must conclude that the evidence was insufficient to support a finding that Keyport or its owners could have reasonably foreseen Royal's theft. Consequently, the evidence is insufficient to support the jury's finding that Keyport and its owners were liable to Smith for Royal's theft. Accordingly, we find that the trial court erred in failing to direct a verdict for the defendants. The trial court is reversed on this issue, and judgment is entered in favor of the defendants.

This holding pretermits our consideration of the other issues raised by the defendants.

The decision of the trial court is reversed, and judgment is entered for the defendants, Keyport Self-Storage, Charles Gilman, and Jerry Wilson. Costs on appeal are taxed to the appellee, Don Smith, for which execution may issue, if necessary.